No. 844. RINGHISER v. CHESAPEAKE & OHIO RAIL-
WAY CO. *Per
Curiam:* The petition for certiorari is granted, and the
judgment is reversed and the cause is remanded. The
trial judge set aside the jury verdict for the petitioner
because, *inter alia,* it was held that the respondent "had
no duty to anticipate that a car was being used for such
a purpose." There was evidence, however, as the trial
court found, that to respondent's knowledge employees
used gondola cars for the purpose. In that circumstance
there were probative facts from which the jury could find
that respondent was or should have been aware of condi-
tions which created a likelihood that the petitioner would
suffer just such an injury as he did. *Rogers* v. *Missouri
Pacific R. Co.,* 352 U. S. 500; cf. *Wilkerson* v. *McCarthy,*
336 U. S. 53. *C. Richard Grieser* for petitioner. *Richard
T. Rector* for respondent.

MR. JUSTICE FRANKFURTER is of the opinion that the
writ of certiorari should not be granted. Since the writ
has been granted, he would dismiss it as improvidently
granted for the reasons set forth in his opinion in *Rogers* v.
*Missouri Pacific R. Co.,* 352 U. S. 500, 524.

MR. JUSTICE CLARK, dissenting.

As MR. JUSTICE DOUGLAS said in *Wilkerson* v. *Mc-
Carthy,* 336 U. S. 53, 68 (1949), "The liability which
[the FELA] imposed was the liability for negligence."
Believing that the Congress was looking to the courts to

see that the railroads were held to strict accountability under the Federal Employers' Liability Act [1] for any negligence whatever resulting in injury to an employee, the Court has taken cases that in ordinary course it would have denied as involving only particular facts rather than questions "of importance to the public," *Layne & Bowler Corp.* v. *Western Well Works, Inc.*, 261 U. S. 387, 393 (1923). As in the seamen's Jones Act [2] cases, the Court feels a duty under this Federal Act to examine each case to make certain that its mandate is honored.[3] There has been no breach in this policy since its establishment soon after the amendment of the Act in 1939. In my opinion, however, the judgment today goes beyond the most generous interpretation that may be given to the Act. The petitioner suffered the grievous injury which resulted in the loss of a leg while using, as a toilet, one of the railroad's cars standing on a switch track. While petitioner was "answering his call of nature" in the car, it moved slightly from a contact with two other cars that were being switched. This contact caused some steel plates in the car to shift, crushing petitioner's right leg.

The Court does not find a failure on the part of the railroad to provide a safe place for the petitioner to work insofar as toilet facilities are concerned. The railroad thus is not found negligent in this respect. But the Court seizes upon a statement in the trial judge's memorandum that "There is evidence that employees sometimes used gondola cars in lieu of toilets. The Court must assume

---

[1] 35 Stat. 65, as amended, 45 U. S. C. § 51 *et seq.*

[2] 41 Stat. 1007, 46 U. S. C. § 688 *et seq.*

[3] Since the October Term 1949 there have been some 17 cases, including 8 this Term, involving the sufficiency of the evidence under the Federal Employers' Liability Act. In 15 of these cases we of the majority, recognizing the responsibility that the Congress has placed on us to enforce the purpose of the Act, entered judgment for the injured employee.

that this was known to the defendant." The trial judge found, however, that the railroad could not anticipate that this particular gondola car would be used for that purpose because it was loaded with freight—steel plates—and was standing on a track that was being used for normal switching operations. The judge points out that petitioner himself thought that the car was empty when he climbed into it. If the car had not been loaded the petitioner would not have suffered the injury which resulted. For these reasons the trial judge found that the railroad could not anticipate that its employee would so use a loaded car or that the resultant injury would occur. In addition, the petitioner had admitted that he "certainly [did] not feel that the yard crew was careless in any manner . . . . This was a very easy impact and the two standing cars did not move over a foot at the most."

In the light of such a record it appears to me that negligence could not be imputed to the railroad. Of course, if the majority is saying that the railroad must inspect every loaded car awaiting switching, lest an employee be using it as a toilet, then I could easily understand the action here. But this it does not say, for it would be not only an unrealistic but an untenable burden to place on the railroad. The Court cites two cases, neither of which appears to me to be apposite. In *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500, 502 (1957), "petitioner was supplied with a crude hand torch and was instructed to burn off the weeds and vegetation along [the railroad's track]." The mishap occurred while he was performing these services. There was a "likelihood that petitioner . . . would suffer just such an injury as he did." *Id.*, at 504. In *Wilkerson* v. *McCarthy, supra,* the railroad had constructed a pit in its yards for the repair of car wheels. It was 40 feet long, 11 feet deep, and over 4 feet wide and was under a series of 3 or more railroad tracks. A permanent board about 22 inches wide was constructed

across the pit and was used by the employees of the rail-
road to walk across it. While there was a chain placed
around a portion of the pit it was not sufficient to stop
employees from using the board for crossing purposes.
An employee slipped on the board which was greasy and
oily and was injured by a fall to the bottom of the pit.
There was thus a very hazardous practice which, a jury
might find, the railroad took inadequate precautions to
prohibit. The railroad was held responsible. The prac-
tice here may be unsanitary, but it is not foreseeably
hazardous. This accident resulted from a combination
of freak circumstances rather than from actionable
negligence.

While I was not on the Court when *Wilkerson* was
decided, I fully agree with its holding and likewise adhere
to my joining the Court in the *Rogers* case. The factual
situations in those cases are far removed from the facts
here. In my opinion the decision today extends the doc-
trine of these cases far beyond any theory of liability for
negligence that the Congress intended under the Federal
Employers' Liability Act.

Mr. Justice Harlan, whom Mr. Justice Whittaker
joins, dissenting.

The facts of this case, as summarized by District Judge
Cecil, are these:

"On October 7, 1950, Boyd R. Ringhiser, the plain-
tiff herein, arose in the afternoon, made preparation
to report for duty at 4:45 p. m., had a bowel move-
ment, made a mental calculation and thereby set in
motion a chain of events which created a result both
unusual and tragic.

"The sequence of these events is as follows: The
plaintiff's bowel movement was unsatisfactory; 'This
won't do,' said he to himself (statement made by
plaintiff at trial, but ordered stricken); he took a

dose of salts and washed it down with sweet cider; he got in his car and drove to Parson's Yard, the switching yard of the defendant, and had a bowel movement at the roundhouse. He then got on his engine and maneuvered it to track twelve, where it was coupled on to a train scheduled for Walbridge Yard at Toledo. While sitting in his engine waiting for his air brake test, he had an urgent call of nature and 'had to go quick.' He dismounted from his locomotive cab to go to a toilet a short distance west. A long train of empties passed between him and the object of his immediate attention. He could not wait for this train to pass and went to No. 8 switch track and climbed into a low-sided gondola car to answer his call of nature. While thus engaged, a yard crew switched two cars into No. 8 switch track. These cars came in contact with the car ahead of plaintiff's car and it likewise came in contact with plaintiff's car. The gondola car in which plaintiff had taken his position was loaded with steel plates and when the cars made contact the plates shifted, caught plaintiff's right leg and crushed it so that a few days later, it had to be amputated."

On these facts I do not think the accident was a reasonably foreseeable consequence of any act or omission of the railroad. I therefore dissent.