Clairon Vern GIBSON, Plaintiff-
Appellant,

v.

ELGIN, JOLIET & EASTERN RAIL-
WAY COMPANY, Defendant-
Appellee.

No. 11743.

United States Court of Appeals
Seventh Circuit.

June 25, 1957.

Rehearing Denied Aug. 30, 1957.

Justin Waitkus, Gary, Ind., Sackett, Pyatt & Waitkus, Gary, Ind., of counsel, for appellant.

Harlan L. Hackbert, Chicago, Ill., Glenn D. Peters, Hammond, Ind., Stevenson, Conaghan, Velde & Hackbert, Chicago, Ill., Peters, Highland & McHie, Hammond, Ind., of counsel, for appellee.

Before DUFFY, Chief Judge, SCHNACKENBERG, Circuit Judge, and GRUBB, District Judge.

GRUBB, District Judge.

This is an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages for personal injuries. Plaintiff was employed by the defendant as a timekeeper. His duties, in addition to keeping time, included checking crews, signing up new employees and making out accident reports. He and George Marjanian, another timekeeper, worked in a building near the Kirk Yard. The interior of this building had a bare wooden floor. About the exterior of the building there were cinders. At one time there had been a floor mat or foot scraper at the entrance to the building. The scraper broke off and was never replaced. At the time of the accident there was no door mat at the entrance. Plaintiff worked at a desk, around which, from time to time, applicants for employment and employees came on business. These men brought in dirt, cinders, pebbles, and grease making the floor dirty and slippery.

On the evening of December 12, 1951, plaintiff and Marjanian were working overtime to get out a payroll. Marjanian asked plaintiff to put an adding machine, which Marjanian had borrowed, under plaintiff's desk to avoid its being damaged by truck drivers in the morning. Plaintiff had done this on other occasions. Plaintiff in putting the adding machine under his desk, struck his head against the edge of the desk.

Plaintiff's testimony was, "it must have been as I was backing out, because I had a terrific bump on my head, and I must have slipped." The motion to strike this as speculative was overruled. Plaintiff continued, "I lost my balance somehow and bumped my head on the edge of the drawer as I was getting out from under the desk. As I was getting out, I say I don't know whether I lost my balance, or not."

Marjanian testified that he heard a noise, looked over and saw plaintiff holding his head. He asked plaintiff what had happened. Plaintiff didn't say anything for about two minutes; then he told Marjanian to take his key and start his car, which Marjanian did. Marjanian came back in and plaintiff "started to tell me that he slipped under his desk and hit his head under his desk; he told me he slipped on some cinders or pebbles; I couldn't tell you exactly what he said at that time."

When being cross-examined with reference to the testimony given on his deposition to the effect that he had shoved the adding machine under the desk, and when he backed out, he didn't back out far enough, and when he lifted up, he cracked his head on the top of the desk drawer, plaintiff testified, "all I do know and do remember is that in backing out in that stooped position my one foot must have slipped, and, catching myself, I must have straightened up, and then I banged my head. * * *" He was unable to tell which foot slipped or what it slipped on. "I don't remember what it slipped on, other than just grime on the floor or maybe grease."

Plaintiff's wife testified that on arriving home that night, plaintiff's trousers, around the cuff and leg "there seemed to be a grease or something at least foreign there to what his clothes normally were." She continued to testify that there was a greasy streak down the front of his leg, probably the left leg and that it looked like a streak of grease.

Sometime later, plaintiff commenced to have symptoms. Ultimately the diagnosis of chronic subdural hydroma associated with cerebral atrophy was made.

Defendant made a motion for a directed verdict. The court reserved its ruling but submitted the case to the jury which returned the verdict in favor of the plaintiff. Thereafter, defendant's motion for judgment, notwithstanding the verdict, was granted. The Trial Court stated:

"While the evidence, as showed (sic) by this testimony, is that the floor of Building 100 was dirty on the evening in question and that frequently there were quantities of cinders, pebbles, grease and tar on

the floor, there is no direct competent evidence that there was any such foreign substance under or in front of the desk where the plaintiff says he received his injury. At best it can only be inferred."

He pointed out that plaintiff testified that "he must have slipped."

The Trial Court further stated:

"To find that the plaintiff injured his head by slipping because of a foreign substance on the floor, we must infer, first, that there was such a substance at the place where the plaintiff was bending under the desk and, second, that he actually slipped because of such condition. Thus, the finding, essential for the support of the verdict, is based upon one inference which rests in turn upon another inference."

The Trial Court added that it was unnecessary to pass upon the additional ground urged that the evidence was insufficient to show that the condition of the floor was due to defendant's negligence. "I will say, however, that I think the question would be serious (sic) one if it were reached."

■ Marjanian's testimony as to what the plaintiff told him was undoubtedly hearsay but it was not objected to and no motion to strike was made. The court is of the opinion that no basis was laid for the receipt of that testimony as *res gestae*. However, the rule with reference to hearsay testimony received without objection is that it is to be considered and given its natural probative effect.

In Wigmore on Evidence, Sec. 18, the author quotes from Diaz v. United States, 1911, 223 U.S. 442, 450, 32 S.Ct. 250, 56 L.Ed. 500:

"So, of the fact that it was hearsay, it suffices to observe that when evidence of that character is admitted without objection, it is to be considered and given its natural probative effect as if it were in law admissible."

Spiller v. Atchison, T. & S. F. Ry. Co., 1919, 253 U.S. 117, 131, 40 S.Ct. 466, 64 L.Ed. 810; The Sac and Fox Indians, 1910, 220 U.S. 481, 31 S.Ct. 473, 55 L. Ed. 552.

Wigmore further adds that failure to make an objection is an implied waiver; that once admitted, the evidence is in the case for what it is worth.

"Hearsay evidence admitted without objection may be regarded as sufficient to establish a fact in controversy."

20 Am.Jur., Evidence, Sec. 1185.

"* * * hearsay evidence, in the absence of objections to its admission, was properly considered by the jury, * * * that the weight to be given to such testimony in view of the attempt made to discredit it was also a question for the jury, * * * and that it should not be disregarded by the Court on this review, * * *."

Byars v. United States, 6 Cir., 1956, 238 F.2d 82, 83.

■ Plaintiff's conclusion as to what "must" have happened, that he "must have slipped", is, no doubt, speculation. However, with reference to speculation in F.E.L.A. cases, the United States Supreme Court stated:

"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference."

Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916, cited with approval in Webb v. Illinois Central R. Co., 352 U.S. 512, 515, 77 S.Ct. 451, 1 L.Ed.2d 503 (Footnote).

In Rogers v. Missouri Pacific R. Co., 352 U.S. 500, at page 506, 77 S.Ct. 443,

at page 448, 1 L.Ed.2d 493, the court stated:

> "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."

And, 352 U.S. at page 508, 77 S.Ct. at page 449:

> "The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference."

In Webb v. Illinois Central R. Co., supra, the court added, 352 U.S. at page 516, 77 S.Ct. at page 454:

> " '* * * It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence * * *.' "

A similar position is taken by the majority of the court in Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511. The dissenting opinion by Mr. Justice Frankfurter and the statistics and material there set forth indicate the attitude of the court in F.E.L.A. cases. Mr. Justice Harlan in his dissenting opinion in that case, states 352 U.S. at page 564, 77 S.Ct. at page 480:

> "* * * And it has always been the function of the court to see to it that jury verdicts stay within that boundary, that they be arrived at by reason and not by will or sheer speculation. Neither the Seventh Amendment nor the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. lifted that duty from the courts. However, in judging these cases, the Court appears to me to have departed from these long-established standards, for, as I read these opinions, the implication seems to be that the question, at least as to the element of causation, is not whether the evidence is sufficient to convince a reasoning man, but whether there is any scintilla of evidence at all to justify the jury verdicts * * *."

It will be seen from these three cases decided in 1957 that the majority of the United States Supreme Court now take the position that jury verdicts under the F.E.L.A. can be permitted to stand even though based solely on speculation.

We agree with the District Judge that the finding essential to support this verdict "is based upon one inference which rests in turn upon another inference." Under the recent decisions of the United States Supreme Court in F.E.L.A. cases, speculation, conjecture and possibilities suffice to support a jury verdict.

It should be pointed out that the Trial Court's decision on the motion for judgment, notwithstanding the verdict, was handed down January 4, 1956, a year before the recent decisions of the United States Supreme Court on this subject, cited herein.

For the foregoing reasons, the judgment of the District Court is reversed and the cause remanded with directions to vacate the order granting judgment, notwithstanding the verdict, and to enter judgment on the verdict.

SCHNACKENBERG, Circuit Judge (dissenting).

While frankly conceding that "plaintiff's conclusion as to what 'must' have happened, that he 'must have slipped', is, no doubt, speculation", and that the verdict in this case "is based upon one inference which rests in turn upon another inference", Judge Grubb, in stating the pivotal ground of his decision, makes this startling assertion:

> "Under the recent decisions of the United States Supreme Court in F.E.L.A. cases, speculation, conjecture and possibilities suffice to support a jury verdict."

Inasmuch as he applies this utterance *to the testimony of witnesses and limits it to Federal Employer Liability Act cases, sui generis*, it constitutes judicial heresy without support in the decisions of the Supreme Court, recent or otherwise. He cites no case in support of this statement. He has obviously misled himself by his reading of the decision in Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, which he fails to notice relates not to speculation and conjecture *by witnesses* in testifying, but relates to speculation and conjecture *by a jury in drawing inferences from the evidence heard on a trial.* The court, 327 U.S. at page 653, 66 S.Ct. at page 744, said:

"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

In the present case it is the witnesses themselves who are doing the speculating and conjecturing, as hereinafter demonstrated.

Judge Grubb's opinion would support the verdict despite "a complete absence of probative facts" showing employer negligence.

The majority opinion is the result of what my colleagues feel is the irresistible compulsion of recent Supreme Court decisions in Federal Employers Liability Act cases. I do not read those cases as requiring a reversal of the district court's action. The Supreme Court has disclaimed any intention of making a railroad an insurer of its employees. Wilkerson v. McCarthy, 336 U.S. 53, 62, 69 S.Ct. 413, 93 L.Ed. 497.

Whether the district judge erred in entering a judgment notwithstanding the verdict in favor of the plaintiff depends on whether the proofs in this record justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury for which plaintiff seeks damages. Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury. The statute imposes liability to pay damages for injury due in whole or in part to the employer's negligence. Ibid., 352 U.S. 507, 77 S.Ct. 448.

There is no evidence in the record that, on the evening when plaintiff bumped his head on his desk, there were any cinders, pebbles, grease or other foreign matter on the floor. Even if we waive the hearsay evidence rule in order to support plaintiff's case, we can find no evidence, substantial, small, slight or even perceptible, of the presence of any foreign substance on the floor on the day of the accident.

He testified that, in order to put an adding machine under his desk, he "stooped down" on his "toe-tips, balancing the machine in" his arms as he crawled into the knee opening of the desk, and that, after he got the machine under the desk, he got a bump on his head as he was backing out. He added, "I must have slipped." A motion to strike the latter part of the answer was

overruled. He further said, "I lost my balance somehow and bumped my head on the edge of the drawer as I was getting out from under the desk. As I was getting out, I say I don't know whether I lost my balance, or not. Anyway, I got a terrific blow on my head." He further testified he had Mr. Marjanian, who worked at a desk directly facing and touching his desk, "carry my adding machine out to the car, and warm the car up and bring it up to building 100 for me. * * * I finished locking up the building, and then I went out to the car, and I drove him home and then I went home."

He reported the injury to his head about a year later.

Marjanian testified that he handed Brown's adding machine to plaintiff, who put it under his desk; but that he did not see him do it. Marjanian testified that he heard a noise, looked and saw plaintiff holding his head, that plaintiff told him to take his key and start his car which he did—letting his car run. He then testified that he came back and plaintiff *"started to tell me* that he had slipped under his desk and hit his head under his desk; *he told me* he slipped on some cinders or pebbles; *I couldn't tell you exactly what he said at that time."*

Plaintiff admitted that he had testified at a deposition hearing that, after he got the machine under the desk, he backed up, scooted out and then he did not know how it happened; "all I do know and do remember is that in backing out in that stooped position my one foot *must have* slipped, and, catching myself, I *must have* straightened up, and then I banged my head up there and everything went blank;" that he could not tell which foot slipped or "what it slipped on, other than just grime on the floor or maybe grease."

Plaintiff's wife testified that, when he arrived home that night, around the cuffs and legs of his trousers "there seemed to be a grease or something at least foreign". There is no evidence that he did not get the grease on his pants legs on the way home, in his car or elsewhere. Neither plaintiff nor Marjanian testified to seeing any grease or other foreign substance on plaintiff's pants legs when he left the office to go home.

The relevant parts of the evidence, most favorable to plaintiff, above referred to, lack probative effect. Obviously, when plaintiff testified that he "must have slipped" and he "must have straightened up", he was not testifying to facts. He was conjecturing or reasoning *ex post facto* what had occurred. Such statements are not evidence of what actually occurred. They are plaintiff's retrospective opinion of what he thinks occurred. His testimony that he lost his balance "somehow" and bumped his head as he was getting out from under the desk is no proof that any substance on the floor *caused him to slip.* Marjanian testified that a considerable time *after the accident* plaintiff told him that he (plaintiff) slipped on some cinders or pebbles, and, in the same breath, Marjanian added that he could not tell exactly what he said at that time. Of course, whatever Marjanian testified that plaintiff then said to him was hearsay evidence, which, not being objected to, we may consider for what it is worth. But, as Marjanian's answer includes his voluntary contemporaneous admission that he could not tell exactly what plaintiff said, his testimony, if relied on to prove employer negligence, is eviscerated.

Plaintiff testified that he "could not say" what the condition of the floor was on the evening he bumped his head. The record shows that it was the regular custom for janitors to sweep the floor of this office twice daily; about 9:30 A.M. and about 1:30 or 1:45 P.M. There is no evidence that they missed this chore on the day of the accident. Neither plaintiff nor Marjanian testified that he saw any cinders, pebbles, grease, dirt or other foreign substance on the floor under or around the desk at the time of the accident or thereafter. This is especially significant in view of Marjanian's testimony that he was present when he heard a noise and saw plaintiff holding his head and he was also there after he

(Marjanian) had started plaintiff's car and returned to the office, and plaintiff said that he slipped on some cinders or pebbles. Having heard a noise accompanying plaintiff's bumping of his head on the desk and having heard plaintiff's later statement that he had slipped on some cinders or pebbles, it is incredible that Marjanian would not have looked at the floor where the accident occurred. Moreover, the absence of any testimony that there was grease on the floor under or near the desk makes irrelevant the testimony of plaintiff's wife that she saw grease on his pants legs when he arrived home after the accident.

The very gist of plaintiff's case is the alleged, but unproved, presence of a foreign matter on the floor under or in front of the desk. The failure to prove the presence of such matter at the time that plaintiff struck his head clearly distinguishes this case from the recent cases of Webb v. Illinois Central R. Co., 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503, where there was evidence of a large cinder embedded in the roadbed, Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511, where the evidence showed that the injured employee was furnished with an inadequate tool, Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493, where the evidence showed the exact conditions which created a likelihood that the employee would suffer just such an injury as he did, and Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, where there was evidence of the existence of a mail hook on the defendant's train.

To paraphrase the language of the court in Moore v. Chesapeake & O. R. Co., 340 U.S. 573, at page 577, 71 S.Ct. 428, 430, 95 L.Ed. 547 (a case involving a fall from the footboard of an engine), we would have to say—"to sustain plaintiff, one would have to infer from no evidence at all that there was a foreign substance under or around the desk prior to and at the time that plaintiff fell, and then infer that he fell because of the foreign substance. This would be spec-

ulation run riot. Speculation cannot supply the place of proof. Galloway v. United States, 319 U.S. 372, 395, 63 S. Ct. 1077, 87 L.Ed. 1458."

After full deliberation, the district judge entered judgment notwithstanding the verdict. I would affirm.

### On Petition for Rehearing

DUFFY, Chief Judge.

The petition for rehearing embraces in fact, if not in language, the charge of Judge Schnackenberg, in his dissenting opinion, that some of the language of the majority opinion, written by Judge Grubb, constituted "judicial heresy." I do not think the charge is warranted. I think Judge Grubb, in his opinion, was only facing realities.

The point is made that in this record there was no direct affirmative proof of the existence of cinders, grease or other foreign matter on the floor under or in front of plaintiff's desk. But the Supreme Court tells us that such degree of proof is not required in Federal Employers' Liability Act cases. That Court, in a recent case, said: "The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference." Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 508, 77 S.Ct. 443, 449, 1 L.Ed. 493.

It is our duty, as I see it, to follow the law as laid down by the Supreme Court, even if the interpretation given does violence to our preconceived ideas of what the law is. If we follow the interpretations of the law as pointed out by our highest court, we should not be accused of judicial heresy. An appraisal, by high authority, of what the majority of the Supreme Court holds to be the rule in Federal Employers' Liability Act cases, is shown by the dissenting opinion of Mr. Justice Harlan in Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511. The

Justice stated, 352 U.S. at page 563, 77 S.Ct. at page 480:

" * * * It has, however, been common ground that a verdict must be based on evidence—not on a scintilla of evidence but evidence sufficient to enable a *reasoning* man to infer both negligence and causation by *reasoning from the evidence.* Moore v. Chesapeake & O. R. Co., 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547. And it has always been the function of the court to see to it that jury verdicts stay within that boundary, that they be arrived at by reason and not by will or sheer speculation. Neither the Seventh Amendment nor the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. lifted that duty from the courts. However, in judging these cases, the Court appears to me to have departed from these long-established standards, for, as I read these opinions, the implication seems to be that the question, at least as to the element of causation, is not whether the evidence is sufficient to convince a reasoning man, but whether there is any scintilla of evidence at all to justify the jury verdicts. * * *" (Emphasis supplied by Justice Harlan)

There can be no doubt that a majority of the Supreme Court, as presently constituted, regards F.E.L.A. cases as something apart and different from other negligence cases, and that a different rule or test applies. In fact, Mr. Justice Brennan, writing the majority opinion in Rogers v. Missouri Pacific R. Co., 352 U.S. 500, at page 509, 77 S.Ct. 443, at page 450, stated: "The kind of misconception evidenced in the opinion below, which fails to take into account the special features of this statutory negligence action that make it significantly different from the ordinary common-law negligence action has required this Court to review a number of cases."

The Supreme Court has decided two cases since the opinion herein was written, which strongly indicate there has been no change in the attitude of the majority as shown by the excerpts hereinbefore quoted.

In Ringheiser v. Chesapeake & Ohio Ry. Co., 354 U.S. 901, 77 S.Ct. 1093, 1095, 1 L.Ed.2d 1268, the plaintiff had an urgent call of nature, and entered a gondola car loaded with freight to relieve himself. The switching crew, not knowing of plaintiff's presence, bumped the car and some of the freight fell upon plaintiff's leg. The trial judge set aside a jury verdict for the plaintiff. A majority of the Supreme Court found no difficulty in reversing. Mr. Justice Clark in dissenting, said: "Of course, if the majority is saying that the railroad must inspect every loaded car awaiting switching, lest an employee be using it as a toilet, then I could easily understand the action here. * * *"

The other case is McBride v. Toledo Terminal R. Co., 354 U.S. 517, 77 S.Ct. 1398, 1 L.Ed.2d 1534. The facts are not set forth in the per curiam opinion of the Supreme Court, but the opinion of the Ohio Supreme Court, 166 Ohio St. 129, 140 N.E.2d 319, indicates that a trainman was climbing down the ladder on a car and slipped. He testified that he didn't know whether he looked at the rungs of the ladder or not. It was night but he could see the last car, three car lengths away. He carried an electric switching lantern, which was hooked over his left arm. He was an experienced trainman. When asked whether he was looking at the rungs of the ladder, he stated: "You can't look down." He admitted that the rungs on all cars are the same distance apart. He stated that he did not miss a rung, he slipped. "He imagined there was snow upon the soles. He had observed snow on the rungs of the ladders."

The Ohio Supreme Court upheld the trial judge in granting judgment for the defendant notwithstanding the verdict, pointing out that the plaintiff testified he couldn't see the rungs below and that, therefore, any lack of lighting could not conceivably have been a factor in causing the foot to slip. In that case Mr.

Justice Frankfurter filed a dissent, in which he again criticizes the court for granting certiorari in F.E.L.A. cases to review facts. He points out that the Ohio Trial Court, the Ohio Court of Appeals and the Ohio Supreme Court had passed on the case, the latter unanimously; that the only issue was sufficiency of the evidence on causation. He adds:

"In agreeing to take the case, the Court merely accedes to the natural desire of an unsuccessful plaintiff to have one more court guess whether there were enough facts on which the jury should be allowed to do its guessing."

He further adds:

"There is no appeal from such abuse of judicial discretion by this Court."

Mr. Justice Burton filed a dissent, agreeing with the Ohio Supreme Court and stating:

"* * * I believe that petitioner's injuries were not caused, 'in whole or in part,' by the possible inadequacy of the lighting."

Mr. Justice Harlan and Mr. Justice Whittaker dissented for the reason given by Mr. Justice Harlan in Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S. Ct. 443, 1 L.Ed.2d 493.

Judge Schnackenberg emphasized in the instant case that plaintiff testified "My one foot must have slipped." In McBride, the plaintiff testified he imagined there was snow upon the soles of his shoes.

Bowing to the extreme position taken by a majority of the Supreme Court, I am convinced the decision reached by the majority of the panel in this case is correct, and I am, therefore, voting to deny the petition for rehearing.

SCHNACKENBERG, Circuit Judge.

Judge Duffy relies on Mr. Justice Harlan's dissenting language in Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 563, 77 S.Ct. 457, 480, 1 L.Ed.2d 511, where the justice refers to the decisions of the United States Supreme Court in Federal Employers' Liability Act cases and says that that Court seems to imply "that the question, at least as to the element of causation, is not whether the evidence is sufficient to convince a reasoning man, but whether there is any scintilla of evidence at all to justify the jury verdicts." There is no difficulty when that test is applied to the case at bar, because the record before us reveals that there is not a scintilla of evidence of employer's negligence as an element of causation for plaintiff's injury. Hence there is a complete absence of probative facts to support the conclusion reached by the majority opinion in this case.

I favor the granting of a rehearing.

GRUBB, District Judge, votes to deny the petition for rehearing.