101 So.2d 37 (1958)
ATLANTIC COAST LINE RAILROAD COMPANY, a corporation, Appellant,
v.
L.C. BARRETT, Sr., Appellee.
Supreme Court of Florida.
March 5, 1958.
*38 Kurz & Maness and William H. Maness, Jacksonville, for appellant.
Bedell & Bedell and C. Harris Dittmar, Jacksonville, for appellee.
DREW, Justice.
L.C. Barrett, Sr., a car inspector for the Atlantic Coast Line Railroad, was seriously injured in the course of his employment. He instituted this suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. to recover damages for such injuries. A motion for summary judgment was made by the railroad and denied. The cause was then submitted to a jury, which returned a verdict in favor of Barrett for $25,000. Judgment was entered and this appeal followed.
We first dispose of the contention of the railroad that the trial court erred when it refused to enter a summary judgment in its favor. The record as it was presented to the court on the occasion of the presentation of the motion for summary judgment disclosed genuine issues of fact. The correctness of his denial of a motion for summary judgment in this case is quite obvious when we consider the federal decisions that require, in Federal Employers' Liability Act cases, the submission of issues of negligence to a jury "if evidence might justify a finding either way on those issues." Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 414, 93 L.Ed. 497. "To do otherwise," we said in Chambers v. Loftin, Fla., 67 So.2d 220, 221, "in close or doubtful cases would be to deprive the railroad workers of [what the Supreme Court of the United States said was] `a goodly portion of the relief which Congress afforded them.'"
In cases arising under the Federal Employers' Liability Act, state rules of evidence are not applied. It is said that such is necessary in the interest of uniformity. Western & Atlantic R.R. v. Hughes, 278 U.S. 496, 49 S.Ct. 231, 73 L.Ed. 473; Jesionowski v. Boston & M.R.R., 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416; Brown v. Western Railway of Alabama, 338 U.S. 294, 70 S.Ct. 105, 94 L.Ed. 100. Moreover, federal decisions govern the question of the sufficiency of the evidence, the type of proof necessary for judgment and the burden of proof. Brady v. Southern Ry. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239; Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239; New Orleans & N.E.R. Co. v. Harris, 247 U.S. 367, 38 S.Ct. 535, 62 L.Ed. 1167; Central Vermont Railway Company v. White, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433.
*39 While proof of negligence on the part of the employer is required to support a recovery by an injured employee, the quantum of proof necessary to establish such negligence and the extent of the negligence of the employer required as a basis for recovery have been reduced almost to the vanishing point by recent decisions of the Supreme Court of the United States. In Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 448, 1 L.Ed.2d 493, the following is said with reference to this statute:
"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due `in whole or in part' to its negligence. (Emphasis added.)
"The law was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference."
The above case was decided in February, 1957. In June of that year in the case of Ringhiser v. Chesapeake & Ohio Railway Company, 354 U.S. 901, 77 S.Ct. 1093, 1094, 1 L.Ed.2d 1268, the trial court set aside a jury verdict for the employee because inter alia it was held that the railroad employer "had no duty to anticipate that a car was being used for such a purpose [as a toilet or outhouse]." There was evidence, however, as the trial court found, that the railroad's employees had used the gondola cars for the purpose of answering a call of nature. The Supreme Court of the United States in that case said: "In that circumstance there were probative facts from which the jury could find that respondent was or should have been aware of conditions which created a likelihood that the petitioner would suffer just such an injury as he did."
The facts as discussed in the dissenting opinions in that case were that the injured employee, while sitting in his engine waiting for a brake test, had an urgent call of nature and "had to go quick". He dismounted from his locomotive cab to go to a toilet a short distance away. A long train of empties passed between him and the object of his immediate attention. He could not wait for this train to pass and went to a nearby switch track and climbed into a low-sided gondola car to answer his call of nature. While thus engaged, a yard crew switched two cars into the switch track. These cars came in contact with the car ahead of the car being used by the employee and it likewise came in contact with *40 the car where the employee was voiding. The gondola car in which the employee had taken his position was loaded with steel plates, and when the cars made contact the plates shifted, injuring the employee. The negligence of the employer was based on the finding of the trial judge that the employees used such gondola cars at times in lieu of toilets and the court therefore must assume that such fact was known to the defendant employer. No excessive speed was charged to the switching crew.
We turn now to an examination of the facts in this case. At about midnight on the night of the injury, Barrett reported to duty at the switching yards at Lakeland. While he was walking along a string of cars to place a blue warning light at one end he diverted his course and walked across two parallel tracks in order to inspect a stationary car for the purpose of determining whether the door was defective or the load unsafe, and, if the car was unloaded, for the purpose of attaching a clean-out tag and possibly a commodity tag. This was a part of his duties as car inspector. He crossed the two tracks with his white light in one of his hands and approached the door of the car which was on track 12. He stated that he could see for some eight hundred feet to the north, the direction in which the lead track lay [that is, the direction from which additional cars would be switched], and when he looked he saw no activity within the range of his vision, which, he said, was about 800 feet. He stated that he knew that the speed limit for coupling operations in the yard was four miles an hour. That this is the speed limit is abundantly established in the evidence. He stated that knowing such switching speed, he also knew from experience that he would have ample time to look in the car and make an inspection and get his head out of the door in time. He therefore raised his lantern and looked in the car. He then heard a loud noise which he recognized as a coupling occurring at the north end of the cut of cars in which the car being inspected was located. He tried to withdraw his head from the door but he was unable to do so and was struck, causing serious injury. He testified that in his opinion from ten years of service in the yard the second cut of cars was kicked at a much greater rate of speed than four miles per hour. He estimated the speed at approximately nine miles per hour. He stated that after he fell down beside the train the combined cuts continued on down the track at a speed of about eight or ten miles an hour.
The railroad argues that even if it be true that the new cut was approaching the car being inspected at an excessive speed, there was nothing to warn the railroad that the employee was making an inspection of the car at the time. A blue light on the end of the cut is required by the rules to warn the other employees of such activities and none was on this string of cars. The jury could have believed from the evidence that the blue light rule was not strictly enforced [there was evidence to this effect]. And there was evidence upon which the jury could have concluded that the employees operating the switching train saw the lights of the other employees in the vicinity and knew that such excessive speed would likely result in injury to a fellow employee.
While the evidence was conflicting in many respects, it was sufficient under the federal decisions to support the jury's finding that the railroad company was guilty of some degree of negligence which resulted in injury to the employee. Under the cited decisions which control actions of this kind, that is all that is required.
Whatever our views on the subject (Seaboard Air Line R. Co. v. Strickland, Fla., 80 So.2d 914, certiorari granted and judgment reversed 350 U.S. 893, 76 S.Ct. 157, 100 L.Ed. 786) or the views of Justice Frankfurter to the effect that "under the guise of suits for negligence, the distortions of the Act's application have turned it more and more into a workmen's compensation act, but with all the hazards and social undesirabilities of suits for negligence because *41 of the high stakes by way of occasional heavy damages, realized all too often after years of unedifying litigation," Stone v. New York, C. & St. L.R.R. Co., 344 U.S. 407, 73 S.Ct. 358, 360, 97 L.Ed. 441, and of Justice Jackson in Wilkerson v. McCarthy, supra, viz. [336 U.S. 53, 69 S.Ct. 424]: "I am not unaware that even in this opinion the Court continues to pay lip service to the doctrine that liability in these cases is to be based only upon fault. But its standard of fault is such in this case as to indicate that the principle is without much practical meaning," we are bound by such cases as Rogers v. Missouri Pacific R. Co., supra, and Ringhiser v. Chesapeake & Ohio Railway Company, supra. Also see Kernan v. American Dredging Company (The Tug Arthur N. Herron), 78 S.Ct. 394.
The judgment is therefore
Affirmed.
TERRELL, C.J., and HOBSON, ROBERTS and O'CONNELL, JJ., concur.