Lina SILVESTRI, Administratrix of the Estate of Dominico Silvestri, Deceased, Plaintiff,

v.

NEW YORK, CHICAGO & ST. LOUIS RAILROAD COMPANY, a corporation, Defendant.

Civ. A. No. 13927.

United States District Court
W. D. Pennsylvania.

July 24, 1959.

John A. DeMay, Jr., James P. McArdle, Pittsburgh, Pa., for plaintiff.

Earl F. Reed, Jr., Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendant.

JOHN L. MILLER, District Judge.

Lina Silvestri, widow and personal representative of Dominico Silvestri,

brought this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. to recover damages for the death of her husband which occurred in an unwitnessed accident at defendant's Brewster, Ohio, Yards on November 7, 1953. Trial by jury resulted in an award for plaintiff and Silvestri's minor children of $45,000 which took into account some contributory negligence on Silvestri's part.[1] The defendant has filed motions for judgment in accordance with its motion for a directed verdict and for a new trial. We shall not disturb the verdict.

The decedent was employed by defendant as a section laborer and had been for many years. On Saturdays and holidays he relieved defendant's regular pumper at Brewster Yards. He met his death shortly after reporting for work on the Saturday of the accident.

Defendant maintained two water pumping stations in its yards, one of which was referred to as the north, or lake pumping station, and the other as the south pumping station. Near each was a large storage tank capable of holding 50,000 gallons of water. The stations were directly across from each other in the yards and were separated by nine sets of railroad tracks, the most southerly of which was the eastbound main.

The regular hours of the pumper and his relief were 7:30 A.M. until 4:30 P.M. Their principal duty was the maintaining of the water level in the storage tanks so that water would be available for use in defendant's engines and for fire protection. There was a reservoir, or lake, near the north station which was fed from a creek on the south side of the tracks. A pumper in his tour of duty would be required to cross the nine sets of tracks between the stations at least twice but might have to make as many as four or five crossings if circumstances connected with his duties required. Those duties in addition to keeping the water level in the tanks constant included treating the water with chemicals to make it usable in the engines, manually starting the pumping machinery at the south station whenever necessary, checking the efficient operation of the pumping machinery at both stations, maintaining the water level in the lake, cleaning screens at both stations and if necessary at the creek or at the reservoir. Both stations had to be kept clean. The south station near which decedent's body was found was equipped with a stove and was used by the pumpers as their office. Although the pumpers were not required to maintain any schedule in performing their various duties, there was evidence that they attended to the pumps and the tanks as their first job on reporting.

Plaintiff's evidence also showed that defendant frequently stored railroad cars on the tracks between the two pumping stations thus blocking a direct route from one to the other. To defendant's knowledge, the pumpers, finding their way obstructed, would sometimes climb over the standing cars passing across the couplers or bumpers of the cars in order to get to the other side.

Silvestri reported for work sometime between 7:00 and 7:30 A.M., parking his car at the north pumping station. At about 8:00 A.M. his body was found bisected at the southernmost rail of the eastbound main about 115 feet east of defendant's south water tank.

Between 7:00 and 8:00 A.M., a train consisting of an engine, coal tender, water tank, forty-nine cars and a caboose was standing on defendant's eastbound main. The train moved twice during the morning. Although most of the witnesses placed the engine, before its first move, opposite the south water tank, the jury might have found that the en-

1. The following interrogatories were submitted to the jury: "Was there any negligence on the part of Dominico Silvestri which caused or contributed to cause his death?" Answer "Yes."

"By what sum do you diminish the total amount of the pecuniary loss in interrogatory No. 2 above, by reason of negligence attributed to Dominico Silvestri?" Answer "$5,000.00."

gine was then standing west of the tank. Although it is known for certain that the lead wheels of the fifth car of the train passed over decedent's body, it is not definitely known whether this occurred during the train's first or second movement.

The engine had been coupled onto the standing cars at about 6:45 A.M. Sometime around 7:30, the engineer having received a signal that the car inspector's test of the brakes of the car had been completed moved the train forward for about twelve car lengths toward a clearance point before being flagged down by the head brakeman because of the movement ahead of a yard engine bringing some cabooses down the eastbound main. About fifteen minutes later, having received clearance from the yardmaster, the engineer started the train again and proceeded to Jewett, Ohio, where word of the accident had been received and an inspection was then made of the wheels of the train.

Decedent's body was severed above the hip joint and found lying face down across the rail nearest the water tank. There was no injury to the body except at the line of severance, indicating that it had not been dragged and no blood was found except near the body. No flesh or blood was found except on the lead wheels of the fifth car of the train.

It was established without contradiction, that no cut was made in the standing train either before or after its first move, that the crew had not been informed that Sylvestri was likely to be in the area, and that no special lookout was posted. There was a dispute whether the whistle had been blown before the first movement but two long blasts were sounded prior to the second move. Defendant's rules required two short blasts to be given before a train movement.

■ We shall deal first with defendant's argument that there was no evidence of negligence to justify submission of the case to the jury. Decedent, admittedly, was obliged to cross the tracks in the performance of his duties at least twice daily and under the evi-

dence his presence thereon could have been expected at any time, particularly at the beginning of the day. Further, since defendant was charged with knowledge that the pumpers climbed over the couplings of standing cars blocking their way across the tracks, a duty to anticipate Sylvestri's presence upon its train which it caused to block the way to the pumphouse could be inferred. Ringhiser v. Chesapeake & Ohio Railway Co., 354 U.S. 901, 77 S.Ct. 1093, 1 L.Ed.2d 1268.

Under the court's charge, the jury might have found that the defendant failed to provide Sylvestri with a safe place to work on the theory that the failure to provide an opening in the cars obstructing the way between the pumping stations required him to move over the couplings or bumpers of the cars. Since it was the decedent's duty to cross the tracks to perform his work at the south pumping station, it was a railroad obligation to provide a reasonable way of access to it which would not expose decedent to the hazards of mounting upon the bumpers of the cars. Lehigh Valley R. Co. v. Scanlon, 2 Cir., 259 F. 137, 140. When the train moved forward into the position which obstructed decedent's path, clearance had not been obtained for its leaving the yard. The jury could have found, with reason, that the short and wholly unnecessary forward movement of the train which resulted in obstructing the way between pumping stations constituted a violation of defendant's duty to conduct its business so as not to subject its employees to unnecessary dangers in the performance of their work.

There was additional evidence to warrant a conclusion that the movement was negligently made, for after the initial stop, the engineer, Bere, started the train forward without having received a signal from the train conductor, Tipton, though it could have been found that standard procedure required him to await such a signal. Cf. Line v. Erie R. Co., 6 Cir., 62 F.2d 657. Indeed, Tipton was inside the caboose at the time work-

ing on his bills. There was disputed evidence, too, that Bere had not received a go ahead signal from Wilson, the head brakeman, as he admittedly was obliged to do before leaving the yard. Wilson at the time of the second movement was engaged in conversation inside a caboose used by the yard switchman and was unaware that the train had moved till the engine passed him by. Visibility was poor; even so no member of the crew was observant whether the train could be moved with safety to persons who might be about the cars, as undoubtedly the decedent was. No lookout was kept for him, or anyone. Whether, in view of Sylvestri's obligation to cross the tracks at that place a lookout should have been kept was for the jury to determine. Cf. Rocco v. Lehigh Valley Railroad Co., 288 U.S. 275, 278, 53 S.Ct. 343, 77 L.Ed. 743; Chicago & N. W. Ry. Co. v. Garwood, 8 Cir., 167 F.2d 848. There were, thus, ample probative facts presented from which the jury could find that defendant was or should have been aware of conditions which created a likelihood decedent in performing duties required of him would suffer just such an injury as he did. Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493.

■ Even so, defendant disputes the sufficiency of proof that railroad negligence played any part in causing Sylvestri's death. But, as defendant well knows, we are not in uncharted waters. Thought there be only circumstantial evidence which gives rise to conflicting inferences, each equally reasonable but only one of which if drawn would render defendant liable, we are not to gainsay the jury's finding. Tennant v. Peoria & Pekin Union Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520: Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Schulz v. Pennsylvania Railroad Co., 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668; Griswold v. Gardner, 7 Cir., 155 F.2d 333.

■ There was a presumption of fact that decedent was engaged in fulfilling duties of his employment when he met his death, Tennant v. Peoria & Pekin Union Ry. Co., supra, 321 U.S. at page 34, 64 S.Ct. at page 412, which presumption was strengthened by evidence of the nature of the relief pumper's service and the custom of checking the water level in the tanks at the beginning of the day's work. The jury could have found that Sylvestri, after leaving the north pumping station, where no one disputed he was, crossed the intervening tracks to attend to his duties at the south pumping station and that finding his way blocked by the cars of a standing train proceeded to cross over the couplers when the train moved and caused him to fall or be thrown to his death. Other inferences were possible—for instance, that he attempted to board a moving train or that he slipped in the snow and fell beneath the wheels of the train while walking along the track, but the jury rejected them, as we now must do. Schulz v. Pennsylvania R. Co., supra. Too, the death might have occurred when the train first moved but that was unlikely for prior to the first movement decedent would have had no occasion to be upon the cars since the train was not then blocking his path. Moreover, the length of the train had been traversed by the car inspectors and two crewmen prior to that move and decedent was not observed about. As we have noted, the jury could have found that the engine was west of the water tank before its first move. If it was then moved eastwardly twelve car lengths—approximately 600 feet—the fifth car behind the engine, coal tender and water tank[2] could have been located at or near where decedent's body was found. Or the jury might have found that the train moved a distance less than 600 feet. There was substantial evidence that the fifth car would have been further east after the first move, but being oral its weight was for the jury. No measurements or distances testified to were mathematical certainties. It was therefore a reasonable conclusion and the jury could have

2. Their measurements were not established.

found, that defendant's negligent obstruction of the pumper's route played a part in causing Sylvestri's death. And it might have found that had the crew exercised reasonable care, decedent's presence would have been observed. We must therefore deny the motion for judgment.

The sole ground urged in support of the motion for a new trial is the improper reception of evidence pertaining to defendant's practice of storing cars on the tracks between pumping stations. That motion too will be denied. Beattie v. Elgin, Joliet and Eastern Ry. Co., 7 Cir., 217 F.2d 863, 866; Dobson v. Grand Trunk Western R. Co., 7 Cir., 248 F.2d 545, 548. The testimony was material to establish not only that defendant stored cars in the pumper's path without making cuts, but also to establish defendant's knowledge that the pumpers crossed over the couplings of the standing cars.

An appropriate order is entered.