No. 19,408.

THE DENVER AND RIO GRANDE WESTERN RAILROAD
COMPANY *v.* WILLIAM R. LLOYD.
(364 P. [2d] 873)

Decided September 11, 1961.   Rehearing denied October 2, 1961.

Mr. T. A. WHITE, Mr. KENNETH D. BARROWS, for plaintiff in error.

Messrs. HORNBEIN & HORNBEIN, Mr. ROY O. GOLDIN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

WE will refer to plaintiff in error as defendant or the railroad, and to defendant in error by name or as plaintiff.

Two claims were set forth in the complaint of plaintiff. The first arises under the Federal Employers' Liability Act (45 U.S.C.A. Section 51). No issues are presented in this court as to the second claim and we make no further reference to it.

Under the first claim plaintiff alleged that on May 1, 1955, while in the course of his employment as a locomotive engineer for defendant, he was injured as a proximate result of defendant's negligence in that defendant

ordered him to operate a locomotive from Soldier Summit, Utah, east to Helper, Utah, on a track designated for and customarily used by westbound trains; that while plaintiff was following such orders defendant caused and permitted freight cars to be placed upon said track without notifying or warning plaintiff thereof. Plaintiff further alleged that defendant failed to maintain a system of block signals over said portion of track and failed to provide plaintiff with a safe place to work. Plaintiff prayed for judgment against defendant in the sum of $35,000 plus other relief.

Defendant denied that it was negligent in any manner whatsoever and by affirmative defenses alleged that plaintiff's injuries and damages, if any, were proximately contributed to or caused by negligence of plaintiff.

The case was tried to a jury of six which returned its verdict in favor of plaintiff assessing his damages at $35,000 which it reduced by 90%, or $31,500, attributed to plaintiff's contributory negligence, resulting in an award of $3,500.00. Motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, was heard and denied and judgment entered on the verdict. The railroad seeks review by writ of error.

Under provisions of the Federal Employers' Liability Act under which this action arises, an employee is entitled to recover damages for his injuries resulting "in whole or in part from the negligence of any of the officers, agents, or employees" of the railroad. Contributory negligence is not a defense under this statute but goes only to diminish the amount of plaintiff's damages "in proportion to the amount of negligence attributable to such employee." (Title 45 U.S.C.A. Section 53).

The evidence discloses that on May 1, 1955, plaintiff was operating a "helper engine" for the defendant railroad, which was assigned to aid heavily loaded trains over a mountain pass from Helper to Soldier Summit, Utah. Having been so assigned to a train from Helper to Soldier Summit he then received orders to return to

Helper on the track designated for and customarily used for westbound traffic.

To the east of Soldier Summit and between Soldier Summit and Helper, is a railroad yard known as Colton in which the railroad has certain switching facilities. Colton has been designated as a "yard," and, as such, properly marked by the railroad. The order received by plaintiff from the dispatcher of the railroad, under which he was to return to Helper, informed him that he had the right-of-way "over opposing trains on westbound track, Soldier Summit to Helper." In addition Lloyd was given a "clearance card" consistent with the dispatcher's order. The dispatcher gave Lloyd no notice or warning that a freight train was engaged in switching operations at Colton, the crew of which had received orders to set out certain cars on the main track over which Lloyd was to proceed. There was evidence that these switching orders had been given and the dispatcher had knowledge thereof at the time Lloyd received his orders and clearance card.

It is undisputed that there were no block signals present; that the crew of the freight train placed a string of empties on the westbound main line in the path of the oncoming plaintiff in accordance with orders received by them; that it was night and they used no flags, lights, fusees, torpedoes or other warning signs to indicate the presence of the cars on the westbound track. The evidence discloses that plaintiff did not so pace his engine as he entered the yard at Colton that he could stop the train after he saw the empty cars standing on the track before him. His engine struck the cars and plaintiff suffered personal injuries in the crash.

The railroad contends that its motion for judgment notwithstanding the verdict should have been sustained for the reason that the negligence of plaintiff was the sole proximate cause of the accident; that the trial court erred in refusing to permit its witnesses to testify regarding the customary and usual application of certain

safety and operating rules promulgated by it; that there was error in admitting all such rules in evidence without proof of their applicability; that the court erred in refusing to give certain instructions tendered by it.

The issues of negligence in this case center around the interpretation and application of certain operating or safety rules promulgated by the railroad. They are as follows:

Rule 93, which provides: "Yard limits will be indicated by yard limit signs. Within yard limits, the main track may be used clearing first class trains as prescribed by the rules. Second and inferior class trains, extra trains and engines must move on all tracks within yard limits prepared to stop unless the track is seen or known to be clear."

Rule D-93, which provides: "All trains and engines running against the current of traffic, must move within yard limits prepared to stop unless the track is seen or known to be clear."

Rule 99: "Where a train stops under circumstances in which it may be overtaken by another train, the flagman must go back immediately with flagman's signals a sufficient distance to insure full protection, placing two torpedoes, and when necessary, in addition, displaying lighted fusees. * * * "

Rule D-152: "When a train crosses over to, or obstructs another main track unless otherwise provided, it must first be protected as prescribed by rule 99 in both directions on the track."

Plaintiff contends that when the train crew switching in the yards at Colton set out cars on the main track, proper warnings should have been set out as provided in rules 99 and D-152. Defendant contends that by reason of rules 93 and D-93 this was not necessary because Lloyd was required to stop his engine, and also contends that this interpretation of the rule had been one of long custom and usage and therefore the failure to put out warnings by the switching crew was not negligence.

We are convinced that the circumstances brought out in the record showing that the dispatcher ordered Lloyd to proceed easterly on a main track assigned to westbound traffic, and issuing to him a clearance card when that dispatcher had already ordered the crew of the freight train to set out cars at Colton without informing Lloyd of that fact, was sufficient evidence of negligence to justify the finding of the jury. Likewise we are of the opinion that when employees of the railroad set out empty cars on the main track, under the circumstances shown by the evidence in the instant case, they were guilty of negligence which is imputed to the railroad, any custom or usage concerning the application of rules 99 and D-152 to the contrary notwithstanding. It is axiomatic that one may not promulgate rules or establish customs, practices, or usage, or adopt constructions thereof so as to absolve himself of his own negligence. To hold otherwise would permit nullification of the benefits provided by the Act of Congress. Adoption by the railroad of operating rules would thereby render meaningless the law under which the railroad is held responsible for injuries caused "in whole *or in part*" by negligence on its part.

In *Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 77 S. Ct. 443, decided February 25, 1957, the Supreme Court of the United States used the following pertinent language concerning the Act of Congress which is under consideration in the instant case:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. * * *

\* \* \*

"The Congress when adopting the law was particu-

larly concerned that the issues whether there was employer fault and whether that fault played any part in the injury or death of the employee should be decided by the jury whenever fairminded men could reach these conclusions on the evidence."

The cases chiefly relied on by counsel for the railroad were decided prior to *Rogers,* supra, and are distinguishable on the facts. Supporting the language quoted above from the Rogers case are many recent opinions among which we find the following: *Shaw v. Atlantic Coast Line R. Co.,* 353 U.S. 920; *Futrelle v. Atlantic Coast Line R. Co.,* 353 U.S. 920; *Deen v. Gulf, C. & S. R. Co.,* 353 U.S. 925; *Ringhiser v. Chesapeake & O. R. Co.,* 354 U.S. 901; *McBride v. Toledo Terminal R. Co.,* 354 U.S. 517; *Gibson v. Thompson,* 355 U.S. 18, 78 S. Ct. 2; *Honeycutt v. Wabash R. Co.,* 355 U.S. 424; *Ferguson v. St. Louis-San Francisco R. Co.,* 356 U.S. 41, 78 S. Ct. 671.

We conclude that the evidence in the instant case was such as to require submission to the jury of the question of whether the railroad was guilty of negligence contributing to the injuries suffered by plaintiff. We have considered the other points urged as grounds of error and find nothing therein warranting reversal.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE McWILLIAMS concur.