HARRIS *v.* PENNSYLVANIA RAILROAD CO.

No. 81. Decided October 19, 1959.

*Marshall I. Nurenberg* for petitioner.

*Edwin Knachel* for respondent.

PER CURIAM.

The petition for writ of certiorari is granted. The judgment of the Supreme Court of Ohio is reversed and the case is remanded for proceedings in conformity with this opinion. We hold that the proofs justified with reason the jury's conclusion, embodied in answers to Interrogatories to Jury numbers I and II, that employer negligence played a part in producing the petitioner's injury. *Rogers* v. *Missouri Pacific R. Co.,* 352 U. S. 500. See also *Moore* v. *Terminal Railroad Assn.,* 358 U. S. 31, and cases cited therein. We therefore find it unnecessary to consider the petitioner's challenge to the Ohio procedure governing interrogatories to the jury.

For the reasons set forth in his opinion in *Rogers* v. *Missouri Pacific R. Co.,* 352 U. S. 500, 524, MR. JUSTICE

16

FRANKFURTER is of the view that the writ of certiorari is improvidently granted.

MR. JUSTICE STEWART took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, concurring.

The suggestion that this and related decisions mean that we have eliminated "all meaningful judicial supervision over jury verdicts" in FELA cases prompts me to file this opinion and bring up to date the compilation which I made in *Wilkerson* v. *McCarthy*, 336 U. S. 53, 68, 71–73. The *Wilkerson* case was decided January 31, 1949. The attached Appendix presents a statistical summary [1] of our stewardship of these FELA cases from that date to October 19, 1959.

Of the 110 petitions for certiorari filed during this period of more than 10 years, 73 were filed by employees and 37 were filed by employers. Of these, 33 were granted, each at the instance of an employee who complained of the lower court's withholding the case from the jury or overturning a jury verdict in his favor. Thirty cases were reversed for usurpation of the jury function; and in each of three the lower court's decision was sustained.

Of the 77 petitions denied, 32 were by employees who sought reversal of a lower court's decision to withhold the case from the jury or to upset a jury's verdict. Eight

[1] Cases in which petitions for certiorari have been granted but which have not yet been decided on the merits have not been included nor have cases been included which did not present issues of negligence or causation under the Act. Moreover, petitions seeking review of judgments of state courts granting new trials are not included because we usually treat them as not being "final" judgments. See 28 U. S. C. § 1257; *Bruce* v. *Tobin*, 245 U. S. 18.

more employees wanted this Court to overturn jury verdicts rendered in the employers' favor.

Of the petitions filed by employers, 35 asked this Court to reverse a lower court decision upholding a jury verdict or holding that the case should have been submitted to a jury. Employers in two other petitions complained of the lower court's action in setting aside a jury verdict and granting a new trial.

It is apparent from the decisions where we refused to review cases in which lower courts withheld cases from the jury or set aside jury verdicts (or where, having granted certiorari, we sustained the lower courts in that action) that the system of judicial supervision still exists in this as in other types of cases.

It is suggested that the Court has consumed too much of its time in reviewing these FELA cases. An examination of the 33 cases in which the Court has granted certiorari during the period of over 10 years covered by the attached Appendix reveals that 16 of these cases were summarily reversed without oral argument and without full opinions. Only 17 cases were argued during this period of more than a decade and, of these, 5 were disposed of by brief *per curiam* opinions. Only 12 cases in over 10 years were argued, briefed and disposed of with full opinions by the Court. We have granted certiorari in these cases on an average of less than 3 per year and have given plenary consideration to slightly more than 1 per year. Wastage of our time is therefore a false issue.

The difference between the majority and minority of the Court in our treatment of FELA cases concerns the degree of vigilance we should exercise in safeguarding the jury trial—guaranteed by the Seventh Amendment and part and parcel of the remedy under this Federal Act when suit is brought in state courts. See *Bailey* v. *Cen-*

*tral Vermont R. Co.*, 319 U. S. 350, 354; *Dice* v. *Akron, C. & Y. R. Co.*, 342 U. S. 359, 363. Whether that right has been impaired in a particular instance often produces a contrariety of views. Yet the practice of the Court in allowing four out of nine votes to control the certiorari docket is well established and of long duration.[2] Without it, the vast discretion which Congress allowed us in granting or denying certiorari might not be tolerable. Every member of the Court has known instances where he has strongly protested the action of the minority in bringing a case or type of case here for adjudication. He may then feel that there are more important and pressing matters to which the Court should give its attention. That is, however, a price we pay for keeping our promise to Congress [3] to let the vote of four Justices bring up any case here on certiorari.

[NOTE: For dissenting opinion of MR. JUSTICE HARLAN, joined by MR. JUSTICE WHITTAKER, see *post*, p. 25.]

---

[2] When the Act of February 13, 1925 (43 Stat. 936), which broadened our certiorari jurisdiction, was before the Congress, Mr. Justice Van Devanter, speaking for the Court, made explicit that the "rule of four" governs the grant of petitions for certiorari. He testified before the Subcommittee of the Senate Judiciary Committee as follows:

". . . if there were five votes against granting the petition and four in favor of granting it, it would be granted, because we proceed upon the theory that when as many as four members of the court, and even three in some instances, are impressed with the propriety of our taking the case the petition should be granted. This is the uniform way in which petitions for writs of certiorari are considered." Hearings on S. 2060, Feb. 2, 1924, 68th Cong., 1st Sess., p. 29. And see Hearings on H. R. 8206, Dec. 18, 1924, 68th Cong., 2d Sess., p. 8.

[3] The "rule of four" was given as one of the reasons why the Congress thought that the increase of our discretionary jurisdiction was warranted. The House Report stated:

"Lest it should be thought that the increase of discretionary jurisdiction might impair the administration of justice and lead to partial

hearings and not secure a decision by the whole court, it is proper to call attention to the very thorough and complete system by which discretionary jurisdiction is exercised. In granting or refusing a prayer for a certiorari the petitioner gets the judgment of the whole court. The application is not disposed of by a single justice. The luminous and informing statement of Mr. Justice Van Devanter tells the whole story:

" 'While the authority of the Supreme Court to take cases on petition for certiorari is spoken of as a discretionary jurisdiction, this does not mean that the court is authorized merely to exercise a will in the matter but rather that the petition is to be granted or denied according to a sound judicial discretion. What actually is done may well be stated here with some particularity. The party aggrieved by the decision of the circuit court of appeals and seeking a further review in the Supreme Court is required to present to it a petition and accompanying brief, setting forth the nature of the case, what questions are involved, how they were decided in the circuit court of appeals, and why the case should not rest on the decision of that court. The petition and brief are required to be served on the other party, and time is given for the presentation of an opposing brief. When this has been done copies of the printed record as it came from the circuit court of appeals and of the petition and briefs are distributed among the members of the Supreme Court, and each judge examines them and prepares a memorandum or note indicating his view of what should be done.

" 'In conference these cases are called, each in its turn, and each judge states his views in extenso or briefly as he thinks proper; and when all have spoken any difference in opinion is discussed and then a vote is taken. I explain this at some length because it seems to be thought outside that the cases are referred to particular judges, as, for instance, that those coming from a particular circuit are referred to the justice assigned to that circuit, and that he reports on them, and the others accept his report. That impression is wholly at variance with what actually occurs.

" 'We do not grant or deny these petitions merely according to a majority vote. We always grant the petition when as many as four think that it should be granted and sometimes when as many as three think that way. We proceed upon the theory that, if that number out of the nine are impressed with the thought that the case is one that ought to be heard and decided by us, the petition should be granted.' " H. R. Rep. No. 1075, 68th Cong., 2d Sess., p. 3.

## APPENDIX TO OPINION OF MR. JUSTICE DOUGLAS, CONCURRING.

### I. Cases in Which Certiorari Was Granted.

A. Where lower court which withheld the case from the jury or set aside a jury verdict for the employee and ordered a new trial or rendered judgment for the employer was reversed:

Hill v. Atlantic Coast Line R. Co., 336 U. S. 911.

Urie v. Thompson, 337 U. S. 163.

Brown v. Western R. of Alabama, 338 U. S. 294.

Carter v. Atlantic & St. Andrews Bay R. Co., 338 U. S. 430.

Stone v. New York, Chicago & St. Louis R. Co., 344 U. S. 407.

Harsh v. Illinois Terminal R. Co., 348 U. S. 940.

Smalls et al. v. Atlantic Coast Line R. Co., 348 U. S. 946

O'Neill v. Baltimore & Ohio R. Co., 348 U. S. 956.

Neese v. Southern R. Co., 350 U. S. 77.

Anderson v. Atlantic Coast Line R. Co., 350 U. S. 807.

Strickland v. Seaboard Air Line R. Co., 350 U. S. 893.

Cahill v. New York, N. H. & H. R. Co., 350 U. S. 898, 351 U. S. 183.

Rogers v. Missouri Pacific R. Co., 352 U. S. 500.

Webb v. Illinois Central R. Co., 352 U. S. 512.

Arnold v. Panhandle & Santa Fe R. Co., 353 U. S. 360.

Futrelle v. Atlantic Coast Line R. Co., 353 U. S. 920.

Shaw v. Atlantic Coast Line R. Co. et al., 353 U. S. 920.

Deen v. Gulf, Colorado & Santa Fe R. Co., 353 U. S. 925.

*Thomson* v. *Texas & Pacific R. Co.*, 353 U. S. 926.

*McBride* v. *Toledo Terminal R. Co.*, 354 U. S. 517.

*Ringhiser* v. *Chesapeake & Ohio R. Co.*, 354 U. S. 901.

*Gibson* v. *Thompson*, 355 U. S. 18.

*Stinson* v. *Atlantic Coast Line R. Co.*, 355 U. S. 62.

*Honeycutt* v. *Wabash R. Co.*, 355 U. S. 424.

*Ferguson* v. *St. Louis-San Francisco R. Co.*, 356 U. S. 41.

*Sinkler* v. *Missouri Pacific R. Co.*, 356 U. S. 326.

*Moore* v. *Terminal R. Assn.*, 358 U. S. 31.

*Baker et al.* v. *Texas & Pacific R. Co.*, 359 U. S. 227.

*Conner* v. *Butler, post,* p. 29.

*Harris* v. *Pennsylvania R. Co., ante,* p. 15.

B. Where lower court which withheld the case from the jury or set aside a jury verdict for the employee and ordered a new trial or rendered judgment for the employer was sustained:

*Reynolds* v. *Atlantic Coast Line R. Co.*, 336 U. S. 207.

*Moore* v. *Chesapeake & Ohio R. Co.*, 340 U. S. 573.

*Herdman* v. *Pennsylvania R. Co.*, 352 U. S. 518.

II. CASES IN WHICH CERTIORARI WAS DENIED.

A. Where lower court withheld case from the jury or overturned a jury verdict for employee and rendered judgment for the employer:

*Scocozza et al.* v. *Erie R. Co.*, 337 U. S. 907.

*Killian* v. *Pennsylvania R. Co. et al.*, 338 U. S. 819.

*Lavender* v. *Illinois Central R. Co.*, 338 U. S. 822.

*Roberts* v. *Alabama Great Southern R. Co.*, 340 U. S. 829.

*Emmick* v. *Baltimore & Ohio R. Co.*, 340 U. S. 831.

*Roberts* v. *Missouri-Kansas-Texas R. Co.*, 340 U. S. 832.

*Gentry* v. *Seaboard Air Line R. Co.*, 340 U. S. 853.

*Moleton* v. *Union Pacific R. Co.*, 340 U. S. 932.

*Healy* v. *Pennsylvania R. Co.*, 340 U. S. 935.

*Ottley* v. *St. Louis-San Francisco R. Co.*, 340 U. S. 948.

*Craven* v. *Atlantic Coast Line R. Co.*, 340 U. S. 952.

*Jaroszewski* v. *Central R. Co.*, 344 U. S. 839.

*Creamer* v. *Ogden Union R. & Depot Co.*, 344 U. S. 912.

*Frizzell* v. *Wabash R. Co.*, 344 U. S. 934.

*Gill* v. *Pennsylvania R. Co.*, 346 U. S. 816.

*Smith* v. *Baltimore & Ohio R. Co.*, 346 U. S. 838.

*Wetherbee* v. *Elgin, Joliet & Eastern R. Co.*, 346 U. S. 867.

*Shellhammer* v. *Lehigh Valley R. Co.*, 347 U. S. 990.

*Keiper* v. *Northwestern Pacific R. Co.*, 350 U. S. 948.

*Click* v. *Jacksonville Terminal Co.*, 350 U. S. 994.

*Barnett* v. *Terminal R. Assn. of St. Louis*, 351 U. S. 953.

*Lupo* v. *Norfolk & Western R. Co.*, 352 U. S. 891.

*Collins* v *Atlantic Coast Line R. Co.*, 352 U. S. 942.

*Bennett* v. *Southern R. Co.*, 353 U. S. 958.

*Kelly* v. *Pennsylvania R. Co.*, 355 U. S. 892.

*Dessi* v. *Pennsylvania R. Co.*, 356 U. S. 967.

*Baum* v. *Baltimore & Ohio R. Co.*, 358 U. S. 881.

B. Where lower court sustained a jury verdict for the employer:

*Jones* v. *Illinois Terminal R. Co.*, 347 U. S. 956.

*Conser* v. *Atchison, Topeka & Santa Fe R. Co.*, 348 U. S. 828.

*Metrakos* v. *Cleveland Union Terminals Co.*, 348 U. S. 872.

*Kane* v. *Chicago, Burlington & Quincy R. Corp.*, 348 U. S. 943.

*Daulton* v. *Southern Pacific Co.*, 352 U. S. 1005.

*Burch* v. *Reading Co.*, 353 U. S. 965.

*Brinkley* v. *Pennsylvania R. Co.*, 358 U. S. 865.

*Masterson* v. *New York Central R. Co.*, *post*, p. 832.

C. Where lower court reversed a jury verdict for the employee and directed a new trial:

*Banning* v. *Detroit, Toledo & Ironton R. Co.*, 338 U. S. 815.

*Dixon* v. *Atlantic Coast Line R. Co.*, 342 U. S. 830.

*Thomas* v. *Chesapeake & Ohio R. Co.*, 344 U. S. 921.

*Milom* v. *New York Central R. Co.*, 355 U. S. 953.

*Anderson* v. *Atlantic Coast Line R. Co.*, *post*, p. 841.

D. Where lower court sustained a jury verdict for the employee or held that the employee's case should have gone to the jury:

*Atlantic Coast Line R. Co.* v. *Haselden*, 338 U. S. 825.

*Atlantic Coast Line R. Co.* v. *Hill*, 340 U. S. 814.

*New York, New Haven & Hartford R. Co.* v. *Korte*, 342 U. S. 868.

*Atchison, Topeka & Santa Fe R. Co.* v. *White*, 343 U. S. 915.

*Pennsylvania R. Co.* v. *Donnelly*, 344 U. S. 855.

*Denver & Rio Grande Western R. Co.* v. *McGowan*, 344 U. S. 918.

*Terminal Railroad Assn. of St. Louis* v. *Barnett*, 345 U. S. 956.

*Southern Pacific Co.* v. *Miller*, 346 U. S. 909.

*Chicago, Milwaukee, St. Paul & Pacific R. Co.* v. *Woodrow*, 347 U. S. 935.

Fort Worth & Denver R. Co. v. Prine, 348 U. S. 826.

Chicago, Burlington & Quincy R. Co. v. Bonnier, 348 U. S. 830.

Chicago & North Western R. Co. v. Margevich, 348 U. S. 861.

Louisiana & Arkansas R. Co. v. Johnson, 348 U. S. 875.

Chattanooga Station Co. v. Massey, 348 U. S. 896.

Chicago, Rock Island & Pacific R. Co. v. Kifer, 348 U. S. 917.

Elgin, Joliet & Eastern R. Co. v. Crowley et al., 348 U. S. 927.

Chicago, Rock Island & Pacific R. Co. v. Wright, 349 U. S. 905.

Atlantic Coast Line R. Co. v. Chancey, 349 U. S. 916.

Great Northern R. Co. v. Hallada, 350 U. S. 874.

New York Central R. Co. v. Ruddy, 350 U. S. 884.

New York, New Haven & Hartford R. Co. v. Cereste, 351 U. S. 951.

Louisiana & Arkansas R. Co. v. Moore, 351 U. S. 952.

Texas & Pacific R. Co. v. Buckles et al., 351 U. S. 984.

Kansas City Southern R. Co. v. Justis, 352 U. S. 833.

Chicago Great Western R. Co. v. Scovel, 352 U. S. 835.

New York, Chicago & St. Louis R. Co. v. Masiglowa, 352 U. S. 1003.

Illinois Central R. Co. v. Bowman, 355 U. S. 837.

Elgin, Joliet & Eastern R. Co. v. Gibson, 355 U. S. 897.

Martin v. Tindell, 355 U. S. 959.

Kansas City Southern R. Co. v. Thomas, 356 U. S. 959.

*Missouri-Kansas-Texas R. Co.* v. *Bush,* 358 U. S. 827.

*Wabash R. Co.* v. *Wehrli,* 358 U. S. 932.

*Butler et al.* v. *Watts,* 359 U. S. 926.

*Pennsylvania R. Co.* v. *Byrne,* 359 U. S. 960.

*Illinois Central R. Co.* v. *Andre. post,* p. 820.

E. Where lower court set aside a jury verdict for the employer because of erroneous instructions and granted a new trial:

*Wabash R. Co.* v. *Byler,* 344 U. S. 826.

*Delaware, Lackawanna & Western R. Co.* v. *Siegrist,* 360 U. S. 917.

MR. JUSTICE HARLAN, whom MR. JUSTICE WHITTAKER joins, dissenting.

The opening of a new Term that confronts the Court with the usual volume of important and exacting business impels me to reiterate the view that cases involving only factual issues and which are of no general importance have no legitimate demands upon our energies, already taxed to the utmost. See *Rogers* v. *Missouri Pacific R. Co.,* 352 U. S. 500, 524, 559 (dissenting opinions). The extreme character of the adjudication which has been made in this case also deserves something more than merely noting my dissent on the merits, for I do not think that the reversal of this judgment is to be justified even under the philosophy of *Rogers.*

Petitioner was injured while engaged, as a member of a "wreck train crew," in retracking two derailed boxcars on the line of another railroad during the early morning of a "sleety, wet and sloppy" day. The operation involved the use on each car of a derrick and four outriggers. Each outrigger was supported from beneath by wooden blocks. The first derailed car was successfully retracked. The equipment then had to be moved for a similar operation

on the second car. In this process petitioner wrenched his back while attempting to remove one of the wooden blocks which had become embedded in mud. Being unable to brace his right foot on the narrow surface of the ground between the block and one of the railroad crossties, petitioner placed that foot on the tie itself. In answer to interrogatories the jury found that respondent had been negligent in that "the tie of the track [petitioner] was required to walk was elevated a substantial distance above the ground level and was covered with grease or oil, thereby affording unstable footing." A verdict in the sum of $25,000 was returned, which on review was set aside by the Ohio Supreme Court.

The Court does not reach the question as to the applicability of the Ohio rule that this specification of negligence excluded appellate consideration of any others asserted by petitioner. I can hardly believe that the Court quarrels with the state court's ruling that as a matter of law the "position of the crosstie, slightly elevated above the roadbed" could not support the jury's finding of negligence because such state of affairs was a common and notorious one. Hence justification for the overturning of this judgment must rest upon what the record shows as to the presence of grease on the crosstie and as to the respondent's culpability for that alleged condition.

Unless liability in FELA cases may be predicated upon mere conjecture, this record for me is manifestly deficient. The only evidence that there was grease on the crosstie was petitioner's statement on cross-examination that he found some grease on the sole of the shoe of his right foot, and the testimony of a section foreman of the other railroad that grease was used on that railroad's switches, which were customarily lubricated at least twice a week. Petitioner had not mentioned on direct examination, in

his pre-trial deposition, or in a written account of the accident made shortly after it occurred; that he had encountered grease at any stage of the operation, and even on cross-examination did not claim that he had seen grease anywhere in the vicinity, still less on the particular crosstie where his foot had rested. With respect to the foreman's testimony, there is no evidence at all in the record before us as to the position of any of the switches in relation to the crosstie in question—whether any of them were adjacent to it or far removed.

But even if this evidence be considered as justifying the jury's conclusion that there was grease on this particular crosstie, there was, in the words of the Ohio court, no evidence whatever that respondent "placed it there, knew about it, or, in the exercise of ordinary care, should have known about it." Evidence as to how long the alleged greasy condition of this crosstie had existed was wholly lacking. The tie on the day in question was covered with mud. And the section foreman of the other railroad testified that there was nothing untoward about the condition of the area when he inspected it the next morning. How in these circumstances it could "with reason" be said that the respondent failed in some duty of inspection is beyond me.

I cannot understand how on this record even the "scintilla" rule of *Rogers* and its progeny, see dissenting opinion in *Sinkler* v. *Missouri Pacific R. Co.*, 356 U. S. 326, 332, can be thought to justify the overturning of this judgment. I fear that this decision confirms my growing suspicion that the real but unarticulated meaning of *Rogers* is that in FELA cases anything that a jury says goes, with the consequence that all meaningful judicial supervision over jury verdicts in such cases has been put at an end. See separate memorandum in *Gibson* v. *Thompson*, 355 U. S. 18, 19. If so, I think the time has

come when the Court should frankly say so. If not, then the Court should at least give expression to the standards by which the lower courts are to be guided in these cases. Continuance of the present unsatisfactory state of affairs can only lead to much waste motion on the part of lower courts and defense lawyers.

I would affirm.