PERION *v.* UNITED FRUIT COMPANY

[No. 15, September Term, 1961.]

*Decided November 8, 1961.*

594

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and SYBERT, JJ.

*I. Duke Avnet,* with whom were *Julius Rich* and *Martin Moncarz* on the brief, for the appellant.

*Randall C. Coleman,* with whom were *Ober, Williams, Grimes & Stinson* on the brief, for the appellee.

SYBERT, J., delivered the opinion of the Court.

Appellant, William J. Perion (plaintiff below), is a merchant seaman who sustained personal injuries while on duty in the engine department of the steamship Antigua, a turbo-electric freighter vessel. His suit to recover for loss and injury against the owner and operator of the ship, United Fruit Company, appellee (defendant below), resulted in a jury verdict for the appellee. From the judgment entered against him for costs the appellant has taken this appeal.

Appellant served as a fireman-water tender. He testified that on the morning of May 9, 1957, he slipped on the floor-plates in the passageway between the fire-room and engine room of the ship due to the presence of oil and water on the floor-plates, and as a result caught the toe of his left shoe in a two-inch space between a vertical condensate pipe and the bulkhead (or wall of the passageway) on his left, causing him to strike his knee hard against the pipe and resulting in the injury. He stated that he had been ordered by a junior engineer to hurry to the engine room to speed up the feed pump located in that room, because the water gauge of the working boiler showed an absence of water, and he was hurrying back to the fire-room, where the boilers were located, to see if adequate water was being pumped to them, when the accident occurred. There were no witnesses to the accident.

The record shows that the passageway is about 12 feet long and 2½ feet wide; that on the forward side of the passageway is a large vertical discharge pipe which bends out into

the passageway at about the height of a man's head and which requires a person returning from the feed-pump to the fire-room to bear to his left at that point; that opposite the discharge pipe, on the aft side of the passageway and adjoining the aft bulkhead, is the abovementioned condensate pipe, also protruding into the passageway, and running vertically from the floor plates of the passageway up into the overhead part of the engine room. The condensate pipe itself is approximately three inches in diameter. However, there is a bend near its base which extends the pipe into the passageway an additional two inches, resulting in an open space of approximately two inches between the inside base of the pipe and the bulkhead. It was conceded that there was no metal or other guard at the bend of the pipe. The passageway itself was illuminated by a single 100 watt bulb, according to the chief engineer, which was slightly off the center line of the passageway, 10 to 12 feet above the floor plates and 10 feet horizontally toward port from the condensate pipe.

The declaration filed by the appellant contained a count based on the alleged negligence of the ship owner and a count based on the alleged unseaworthiness of the vessel. In presenting his case in the trial court, appellant sought to establish several distinct causes of the accident: (1) his slipping due to foreign matter on the floor plates; (2) the unsafe location of the condensate pipe in the passageway; (3) the unsafe condition created by the unguarded bend at the base of the pipe; and (4) inadequate lighting of the passageway.

A marine engineer testified for the appellant that the condensate pipe could have been placed outside the passageway without materially affecting the efficiency of its operation. He also stated that as a rule a metal guard is placed about an obstruction, such as the bend at the base of the pipe, in order to avoid accidents. The chief engineer of the vessel, called by the appellee, stated that it would have been possible to have placed the condensate pipe elsewhere so that it would not have been an obstruction in the passageway, but that this would have been uneconomical and less efficient. There was also conflicting testimony as to the adequacy of the lighting in the passageway, appellant testifying that it was dim, while

witnesses for appellee maintained that it was more than sufficient.

In his own testimony appellant assigned as the activating cause of the accident his slipping on the oil and water in the passageway, thereby causing his foot to catch between the bend in the pipe and the bulkhead and resulting in the injury. There was sharp dispute as to the presence of any foreign matter on the floor plates. Appellant stated that they were wet because the walls and floor of the passageway had been hosed down with water 15 to 30 minutes prior to the accident, and that he also saw some oil and grease on the floor plates. However, there was testimony by the second assistant engineer that the ship in question had never, to his knowledge, been washed down in its interior with a hose because of the danger involved with a totally electric power plant aboard, and that when he inspected the passageway just after the accident the floor plates were "clean and dry". His testimony was supported by that of the chief engineer. An attorney for appellee also testified that in an unsigned statement given to him by the appellant subsequent to the accident the seaman stated "I did not slip on anything".

Because of what appellant himself had testified—that he caught his foot in the pipe due to slipping—the trial court instructed the jury that in order for the seaman to recover on the basis of negligence on the part of the ship owner or on the basis of unseaworthiness of the vessel, it was necessary to find that there was oil or water on the deck plates which caused the appellant to slip and that the slipping was in fact the direct and proximate cause of his injuries. The court further instructed the jury in effect that only in determining whether the seaman was guilty of contributory negligence in not noticing and avoiding the oil and water on the floor plates could they consider the testimony in regard to the alleged dim lighting of the passageway, the alleged improper location of the condensate pipe with its unguarded bend and the narrowness of the passageway. As to the standard of care required of the ship owner toward a crew member under the negligence count, the trial court stated in its charge that it was "the ordinary care and caution which reasonably prudent ships'

officers and other agents of the Company operating vessels of the type involved in this suit could be expected to exercise under like circumstances." The appellant excepted to each of these charges. The jury returned a verdict for the appellee, finding specifically, on issues presented to them in the instructions, that: (1) The ship owner was not guilty of any negligence which was the proximate cause of or directly contributed to the happening of the accident; and (2) that appellee's vessel was not unseaworthy so as to constitute a cause of the accident.

In appealing from the judgment entered on the verdict, appellant contends the trial court erred in instructing the jury, (1) that to make out a case of primary negligence or of unseaworthiness, the appellant was required to establish that his injury was caused by slipping due to oil or water on the floor plates, exclusively, and that his other allegations of negligence and unseaworthiness (i.e. an unsafe pipe obstruction in the passageway and a lack of a metal guard about the protruding bend at the base of the pipe and inadequate lighting) were to be considered only for the purpose of determining whether appellant was guilty of contributory negligence; and (2) that with respect to the negligence count, the standard of care required of the appellee ship owner was ordinary care.

## (1)

Since the accident complained of here occurred on navigable waters of the United States, this tort action is governed by the federal maritime law. *Garrett v. Moore-McCormack Co.*, 317 U. S. 239 (1942); *Frazier v. Waterman S. S. Corp.*, 206 Md. 434, 112 A. 2d 221 (1955). The declaration alleges the ship owner's liability both for negligence under the Jones Act, 46 U. S. C. § 688, and for unseaworthiness under the general maritime law. The Jones Act provides:

> "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-

law right or remedy in cases of personal injury to railway employees shall apply * * *."

The statutes applicable to railway employees are contained in the Federal Employers' Liability Act (F. E. L. A.), 45 U. S. C. §§ 51 *et seq.* Section 51 reads, in pertinent part:

"Every common carrier by railroad while engaging in commerce * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury or death resulting *in whole or in part* from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." (Emphasis supplied.)

It is the basis of appellant's argument that in maritime law, where there are a number of negligent or unseaworthy conditions alleged, it is not necessary to establish a single act or condition, but that the injured party is entitled to have the jury consider concurrent causes in establishing negligence or unseaworthiness. Our review of the authorities—particularly the recent pertinent decisions of the Supreme Court of the United States—leads us to conclude that the position of appellant is correct.

Determination of the negligence issue hinges in the final analysis upon the interpretation by the Supreme Court of the words "in whole or in part" of the statute herein involved. The cases since 1939, when an important amendment was made to the F. E. L. A.,[1] reveal an unmistakable trend that has culminated in a series of recent decisions which would appear to compel the conclusion at which we have arrived.

---

1. This amendment, 53 Stat. 1404 (1939), 45 U. S. C. 54 (1943), in effect provided that in any action brought by an employee against a common carrier to recover for injuries or death, the employee shall not be held to have assumed the risk of his employment in any case where such injury or death resulted *in whole or in part* from the negligence of any of the officers, agents, or employees of such carrier.

Since the amendment the Supreme Court has by its decisions greatly enlarged the function of the jury and the area they may legitimately review in determining whether an employer was in fact negligent in F.E.L.A. cases, which has resulted in a reciprocal attrition of the judge's function of deciding whether the facts are sufficient to go to the jury in such cases. For an interesting and comprehensive analysis of this trend in Supreme Court cases, see case note in 25 Tenn. Law Rev. at 287 *et seq.*

In a recent and leading case regarding the requirement of causation, the Supreme Court has interpreted the key phrase "in whole or in part" in these words:

> "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played *any part, even the slightest,* in producing the injury * * * for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, *including the employee's contributory negligence.* Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played *any part at all* in the injury * * *. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, *even though entirely circumstantial,* from which the jury may with reason make that inference." (Emphasis supplied.)

*Rogers v. Missouri Pacific R. Co.,* 352 U. S. 500, 506-508 (1957). That case involved a plaintiff railroad worker assigned to burn weeds and grass on a slope adjacent to the tracks with a crude blow-torch. When a train approached the plaintiff remained near the flames to check the train for hot-boxes, a former duty which he had not been told to discontinue when beginning work with the flame thrower. He became enveloped in smoke and flames fanned by the passing

train and ran down the slope to a nearby culvert from which he slipped and fell, presumably because of loose and sloping gravel on its surface. In reversing the Supreme Court of Missouri, which had overturned a judgment based on a jury verdict for the plaintiff, the Supreme Court held that the evidence was sufficient to support the verdict and that the Missouri Supreme Court had improperly invaded the function of the jury. It also stated (at p. 503) that common experience should have been enough to put the railroad employer on notice of such an occurrence and "* * * In this view, it was an irrelevant consideration whether the immediate reason for his slipping off the culvert was the presence of gravel negligently allowed by the respondent to remain on the surface, or was *some cause not identified from the evidence.*" (Emphasis supplied.)

In *Ferguson v. Moore-McCormack Lines,* 352 U. S. 521 (1957), decided on the same day as *Rogers,* the plaintiff, a baker on a ship, attempted to use a butcher knife to chip up some ice cream in order to serve it and sustained injury to his fingers. The Supreme Court reversed the Second Circuit, which had reversed a judgment on a jury verdict for plaintiff. From evidence that plaintiff was not furnished a proper scoop, that the hardness of the ice cream was produced by failure of another member of the crew to take it out of the deep freeze, that no adequate device was close at hand and that plaintiff was instructed to give prompt service, the Supreme Court held that fair-minded men (the jury) could conclude that the employer should have foreseen that the plaintiff would be tempted to use a knife. The court cited its decision in *Rogers* that the test in a jury case is whether the proofs justify a reasonable conclusion that "employer negligence played any part, even the slightest, in producing the injury."

Among the cases directly citing the decision in the *Rogers* case are *Webb v. Illinois Central R. Co.,* 352 U. S. 512 (1957); *Gibson v. Elgin, Joliet & Eastern Railway Co.,* 246 F. 2d 834 (7th Cir. 1957), cert. den., 355 U. S. 897; *Ringhiser v. Chesapeake & O. Ry.,* 354 U. S. 901 (1957); *Harris v. Pennsylvania R. Co.,* 361 U. S. 15 (1959); *Sentilles v. Inter-Caribbean Shipping Corp.,* 361 U. S. 107 (1959); and *Michalic v. Cleveland Tankers, Inc.,* 364 U. S. 325 (1960).

The appellant relies heavily on the case of *Fleming v. Kellett,* 167 F. 2d 265 (10th Cir. 1948). There, the plaintiff railroad employee was injured when, in descending from a metal ladder on the engine of a moving train in a freight yard, he slipped on a rung of the ladder and was left hanging on to grabirons on the side of the engine. He ran alongside the engine until his foot caught in some debris on the roadbed, jerking one hand loose from his hold on the grabirons and causing him to be dragged along holding on with his other hand, ultimately causing serious personal injury. Plaintiff charged that his slipping from the ladder was caused by the jerking of the engine and that his subsequent fall and injury resulted from the debris and uneven condition of the ground on which he was running after he slipped off the ladder. The jury found in favor of the railroad as to the jerking of the engine and absence of debris, but found that the roadbed was negligently uneven and insecure, which condition proximately caused plaintiff's injuries. On appeal the railroad contended that it had been exonerated by the jury from responsibility for the employee's slipping and was not under any duty to provide him with a smooth place on which he might accidentally fall. In affirming, the Court of Appeals said in part (at p. 267 of 167 F. 2d):

"* * * This reasoning [of the railroad] would be sound if we accept as a conclusive fact that the slipping from the step of the ladder was the sole cause of the fall which resulted in the injuries. But the fallacy of this argument is that it assumes too much. Even though appellee accidentally slipped from the step through no fault of the Railroad, he was nevertheless entitled to a reasonably safe place on which to attempt to regain his footing, and if he failed to regain his footing and his fall was precipitated by the uneven and insecure condition of the roadbed where he was required to alight, we cannot say that such condition was not a substantial factor in bringing about the harm.

"If the injury was caused by either the act of slipping from the step, for which the Railroad was

not responsible, or alighting upon an uneven and insecure roadbed, for which it was responsible, either one of which was sufficient to bring about the injuries, it was for the jury to determine which of the two was the substantial factor and legal cause. See Restatement of Torts, Sec. 432(2) and 434."

Other cases have followed the reasoning of the *Fleming* case in holding that a jury could properly find a railroad liable under the F.E.L.A. for negligently failing to provide a safe place for an employee to alight, or in getting on and off trains, though the employee may have been contributorily negligent in falling. See, for example, *Wantland v. Illinois Central Railroad Co.,* 237 F. 2d 921 (7th Cir. 1956) ; *Atlantic Coast Line Railroad Co. v. Gunter,* 229 F. 2d 842 (5th Cir. 1956) ; *Thompson v. Gibson,* 290 S. W. 2d 305 (Texas Civ. App. 1956).

The *Fleming* case is closely analogous to the instant case. Appellant's slipping was found by the jury not to have resulted from any negligence on the part of appellee. However, had the jury been permitted to consider the other factors raised by appellant—the protruding condensate pipe, the unguarded bend at its base, and the question of inadequate lighting—they might have reached a conclusion similar to that reached in the *Fleming* case. They might have found, as in that case, that the ship owner, while not negligent with respect to foreign material on the floor plates, was nevertheless negligent in not providing a reasonably safe place in which Perion might regain his footing, and/or that the narrowness of the passageway, the unguarded pipe and the lighting rendered the vessel unseaworthy in light of the emergency errand upon which Perion was engaged at the time of the accident.

The appellee and the trial court attempted to distinguish the instant case from the *Fleming* case by pointing out that the appellant himself limited the catching of his foot in the space between the pipe bend and wall to one cause—his slipping; whereas in the *Fleming* case, the plaintiff there testified that three separate conditions caused his accident. However, the record is clear that appellant had put into evidence the matter of the allegedly hazardous condensate pipe as well

as the lighting of the passageway and its other physical characteristics, which the jury could have found contributed to the ultimate injury. Under the Supreme Court decisions cited it is plain that those factors should have been submitted to the jury so that it could determine whether "employer negligence played *any part, even the slightest,* in producing the injury * * * for which damages are sought." As to the jury's function in negligence actions: "Fact finding does not require mathematical certainty. Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or *proof of circumstances from which inferences can fairly be drawn.*" (Emphasis supplied.) *Schulz v. Pennsylvania R. Co.,* 350 U. S. 523, 526 (1956). The employee's burden is met when he adduces any proof from which the jury may with reason make the inference of employer's negligence, and it does not matter that the jury may with reason find that other causes also contributed to the result, including the employee's contributory negligence. *Rogers v. Missouri Pacific R. Co., supra.* This Court also, in *Farrell Lines, Inc. v. Devlin,* 211 Md. 404, 127 A. 2d 640 (1956), has indicated its recognition that the jury may consider the various possible inferences raised by the proofs. In that case a seaman fell and was injured as he attempted to walk across a "precarious" ladder from the dock to his ship. In affirming a jury verdict for the seaman, we held that the evidence produced was sufficient to justify the jury finding and that "We think the minds of reasonable men would not unite in deciding that Devlin's negligence, and *only* Devlin's negligence, brought about the harm he suffered." Id. at p. 420 (Emphasis supplied).

We think the trial court instructed too narrowly when it informed the jury that it could consider only the matter of appellant's slipping on the alleged oil or water in the passageway in determining whether there was negligence on the part of the appellee. In light of the state of the law now existing, it is clear that appellant was entitled to have the jury consider the other alleged acts or omissions of the ship owner in

determining the issue of negligence, and the trial court should have included them in its instructions to the jury.

If it was error to omit from the instructions those factors under the issue of negligence, it was more clearly erroneous not to have included them under the unseaworthiness issue. There is no necessity to establish negligence at all under the doctrine of unseaworthiness. *Seas Shipping Co. v. Sieracki,* 328 U. S. 85 (1946). The ship owner's duty to furnish a seaworthy vessel is absolute, and is completely independent of the owner's duty under the Jones Act to exercise reasonable care. *Michalic v. Cleveland Tankers, Inc., supra,* 364 U. S. 325 (1960); *Mitchell v. Trawler Racer, Inc.,* 362 U. S. 539 (1960). The most obvious situation in which the doctrine is invoked is that in which defects in the ship's structure, machinery, appliances, tackle and gear, etc., are involved. *Mahnich v. Southern S. S. Co.,* 321 U. S. 96 (1944). *A fortiori,* if the jury should have been permitted to consider whether the location of the condensate pipe, its unguarded bend, or the degree of lighting in the passageway, were such as to constitute acts of negligence, they should have been allowed to consider whether these same conditions would make the vessel unseaworthy to the person to whom the duty was owed. See Norris, *Maritime Personal Injuries,* § 71. Since the appellant had included counts of negligence and unseaworthiness in his cause of action, under the facts of this case he was entitled to have the jury instructed fully under both counts as to the conditions upon which they could base their finding, as determined by the evidence, including the matter of the condensate pipe and the lighting of the passageway, as his prayers requested.

(2)

We fail to find any merit in appellant's second contention, which relates to the instruction as to negligence. The trial court defined negligence in its charge to the jury as "* * * the failure to exercise the ordinary care and caution which reasonably prudent ships' officers and other agents of the company operating vessels of the type involved in this suit could be expected to exercise under like circumstances. * * *"

While it may be true that the "* * * obligation of a ship-owner to his seamen is substantially greater than that of an ordinary employer to his employees * * *", *Koehler v. Presque-Isle Transp. Co.,* 141 F. 2d 490 (2nd Cir., 1944), cert. den., 322 U. S. 764, that obligation is still couched in terms of reasonableness, as determined by the circumstances. *Curtis Bay Towing Co. v. Dean,* 174 Md. 498, 199 Atl. 521 (1938), cert. den., 305 U. S. 628; *Smith v. Hercules Company,* 204 Md. 379, 104 A. 2d 590 (1954); *United Pilots Association v. Halecki,* 358 U. S. 613 (1959); Norris, *Maritime Personal Injuries,* § 38. In the *Curtis Bay Towing Co.* case, *supra,* this Court in speaking of the duty owed under such circumstances, said at p. 513, "It may be stated as a well recognized principle that the law imposes upon the master the duty towards his servant of exercising due and reasonable care to provide and maintain a safe place in which to work * * *. What the employer is bound to do is to exercise due care to provide safety for his workmen; and what may or may not be due care depends upon the circumstances of each particular case * * *."

The trial court's instruction clearly met this test and it specifically applied it as the duty owed, not by an ordinary employer to his employees, but as that of "reasonably prudent ships' officers and other agents of the company operating vessels of the type involved in this suit * * *."

Since there was error in the instructions dealing with negligence and unseaworthiness, the judgment must be reversed.

> *Judgment reversed and case remanded for a new trial; costs to be paid by appellee.*