**Lawrence M. MILLER**

v.

**CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILWAY COMPANY.**

**Civ. A. No. 3660.**

United States District Court
E. D. Tennessee, S. D.

Feb. 8, 1962.

Van Derveer, Brown & Siener, Chattanooga, Tenn., for plaintiff.

Whitaker, Hall & Haynes, Chattanooga, Tenn., for defendant.

WILSON, District Judge.

This case is before the Court on a motion for judgment, or, in the alternate, for a new trial. The case arises out of injuries which the plaintiff received upon August 7, 1958 in the course of his employment with the defendant. The suit was brought under the Federal Employer's Liability Act, 45 U.S.C.A., § 51 et seq. It was alleged that the plaintiff, while employed as an engine carpenter, and while working around an emergency fire hose, sustained an injury in attempting to replace the fire hose nozzle in its bracket, from which it had become disengaged. The principal injury was alleged to have been a traumatic severance of the tendon to the biceps muscle in the right arm. The case was tried upon August 29, 1961 and resulted in a verdict for $24,000 in favor of the plaintiff. The defendant has therefore filed this motion now before the Court.

The motion for judgment on the defendant's motion for directed verdict made at the conclusion of the trial, is based upon four grounds, all relating to the alleged insufficiency of the evidence, as a matter of law, to entitle the plaintiff to have the case submitted to the jury. Likewise the first two grounds of the motion for new trial are based upon the alleged inadequacy of the evidence. The remaining grounds in the motion for new trial relate to the alleged excessiveness of the verdict, the refusal of the Court to grant a special charge requested by the defendant and the alleged inconsistency between the special issues and the general verdict found by the jury.

All of the grounds relating to the evidence will first be considered.

From the testimony on the trial it appears that the plaintiff, a 62 year old engine carpenter, during the course of his work for the defendant upon August 7, 1958, sustained a rather unusual injury in that he suffered a traumatic severance of the tendon to the biceps muscle in the right arm, causing that muscle to become unattached to the shoulder. Upon that date he was working alone, welding brackets to the ceiling of small sheds housing emergency high pressure fire hose equipment. This work was being done in preparation for the insulating of these sheds, and to prevent freezing of the fire fighting equipment. The sheds were attached to one of the defendant's shop buildings, and the fire hose was accessible from the shop through windows or openings from the shop into the shed for that purpose. The emergency high pressure fire hose equipment consisted of a hose, approximately two inches in diameter, wound upon a reel, with the reel mounted on top of a boxlike structure which housed the electric pumps. The entire piece of equipment was about the heighth of an ordinary man, and some four feet wide and two feet deep. Attached to the hose was a high pressure nozzle some two feet in length, having a pistol type grip and equipped to operate by a trigger. This nozzle was mounted upon brackets in such a manner as to be accessible from the shop through the windows opening into the shed. The equipment was so constructed that when the nozzle was removed from its brackets or clamps, a switch turned on the pump motor which generated water pressure up to 800 to 850 pounds. Upon return of the nozzle to its proper place in the brackets the electric switch was depressed and the pumps turned off. When the pumps were off the hose was under normal pressure of 130 to 150 pounds.

The plaintiff was the only witness to the actual occurrence in which he was injured. According to his testimony he climbed up on top of the high pressure fire hose equipment in order to electric

weld a bracket to the shed ceiling over the equipment. During the course of this work, the fire hose nozzle became disengaged from its brackets, the plaintiff's activities knocking it loose, whereupon, according to the plaintiff, the nozzle began discharging water. He thereupon reached down from his position on top of the equipment and replaced the nozzle with his left hand but in doing so he laid the end of the nozzle on top of the brackets, rather than clamping it in the brackets, its normal position. According to the witness this action nevertheless stopped the nozzle from discharging water. The plaintiff thereupon dismounted from the equipment and proceeded to replace the nozzle within the bracket clamps, rather than leaving it on top. Access to the nozzle from within the shed, as distinguished from going out into the shop and reaching through the access window, was rather cramped. The plaintiff, while standing within the shed at one end of the equipment, sought to reach around with his right arm, grasp the nozzle, lift it from its position on top of the brackets and return it into the bracket clamps. He testified that in so doing, upon removal of the nozzle from its position on top of the bracket, water again surged through the nozzle and that in the strained position in which he was in, with his arm against the corner of the equipment, he felt a sharp pain in his right arm. Nevertheless, he succeeded in restoring the nozzle to its proper position and once again the flow of water was turned off. He denies having depressed the trigger at any time on the nozzle. He then discovered that the biceps muscle in his right arm had dropped down toward his elbow, and after reporting his injury he was taken to the hospital.

Robert P. Hines, a civil engineer who testified on behalf of the plaintiff, stated that he had examined similar high pressure fire hose equipment and nozzle and had obtained the manufacturer's specifications upon the equipment. After demonstrating the mechanisms and operation of the nozzle, he testified that one of the pictures in exhibit had a nozzle with a partially depressed trigger and this in his opinion was due to a defective valve or defective spring in the nozzle. There was later proof in the record that the picture from which the witness testified was not the nozzle involved in the accident. However, the witness further testified that if the water surged through the nozzle upon the plaintiff's lifting it off or out of the brackets, and without depressing the trigger, this indicated erratic behavior as water should not surge through the nozzle until the trigger was depressed, even with the pumps on.

The defendant, in addition to producing in court the actual nozzle involved and a mock-up of the equipment, produced witnesses who testified that following the accident no defect was found in the nozzle, no defect in its operation could be discovered, and it had never been necessary to make any repairs or adjustments to it. At an inspection a few hours after the accident, the equipment was checked and found to be operating properly in every respect, with water not being discharged from the nozzle upon removal from the brackets until the trigger was depressed. However upon this motion, the testimony must be considered in the light most favorable to the plaintiff. Upon cross-examination the defendant's process engineer stated that if water did flow from the nozzle without depressing the trigger, this would indicate that the equipment was defective.

Upon this state of the record it is the contention of the plaintiff that the jury might properly find that the defendant was guilty of negligence in at least three respects, first in providing defective equipment, second in failing to provide a safe place to work, and third in failing to provide adequate help to enable the plaintiff to perform his job safely. Upon the latter two grounds, it is the opinion of the Court that there was no evidence in the record upon which the jury might find that the defendant was negligent or upon which the jury might find that such negligence was the proximate cause of the plaintiff's injury. The plaintiff's in-

jury occurred when he was standing upon the floor. There is nothing in the record to indicate that this was an unsafe place from which to work. Likewise his injury occurred as he was seeking to replace the nozzle. There is nothing to indicate that this was a job requiring the skill or strength of more than one man to perform it safely, or that the plaintiff sought or requested any additional help. Even though additional help may have been needed in installing the ceiling brackets, the injury did not occur during that stage of the work.

A much more difficult problem is presented in determining whether there is any evidence upon which the jury might have found the defendant guilty of negligence in maintaining or providing defective equipment. The Court is of the opinion that upon viewing the evidence in the light most favorable to the plaintiff, there is testimony in the record upon which the jury might find that the fire hose nozzle was defective. Both Mr. Hines, the civil engineer who testified on behalf of the plaintiff, and Mr. Barksdale, the defendant's process engineer, testified that if water surged through the nozzle without depressing the trigger, the nozzle was defective. The plaintiff testified that water did so surge through the nozzle and that he did not depress the trigger. But this testimony alone is not sufficient to establish negligence. There must further have been evidence upon which the jury might have found that the defendant knew, or in the exercise of reasonable care, should have known of the defective condition of the equipment. There must be evidence from which the jury could conclude either that the defendant knew of the defective equipment or that the defective equipment had existed in that state for such a time as reasonably to have been discoverable by the defendant. In short, in order for the defendant to have been negligent, not only must there have been evidence of defective equipment, but also evidence of actual or constructive knowledge of this condition by the defendant. It is contended by the plaintiff that actual or constructive notice of the alleged defective condition is no longer a requirement for the establishment of negligence under FELA. In support of this the plaintiff has cited the following cases: Rogers v. Missouri P. R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); Webb v. Illinois Central Railway Co., 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503 (1957); Ferguson v. Moore-McCormick Lines, Inc., 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957); Ringhiser v. Chesapeake & Ohio Railroad Co., 354 U.S. 901, 77 S.Ct. 1093, 1 L.Ed.2d 1268 (1957); Beattie v. Elgin Joliet & Eastern Railway Co., 217 F.2d 863 (C.C.A.7, 1955); Harris v. Pennsylvania Railroad Co., 361 U.S. 15, 80 S.Ct. 22, 4 L.Ed.2d 1 (1959); Fritts v. Toledo Terminal Railroad Co., 293 F.2d 361 (C.C.A.6, 1961).

A review of the above cases however reveals that they either do not involve the issue of notice or the Court found under the evidence that a jury question existed on the issue of notice. They do not lead this Court to conclude that actual or constructive notice or knowledge upon the part of the defendant of the defective condition has been eliminated as a requirement for establishing negligence in FELA cases.

On the contrary, logic impels one to conclude that so long as liability is predicated upon negligence, as it is under the FELA, no defendant should be held liable for defective equipment of which he neither does nor, in the exercise of reasonable care, should have knowledge. Each of the above cases cited by the plaintiff which involves the issue of notice, upon careful review, is believed to be in accord with this principle. Other authority is believed to uniformly support it. Kaminski v. Chicago River & Indiana R. Co., 200 F.2d 1 (C.A.7, 1952); Waller v. Northern Pacific Terminal of Oregon (1946) 178 Ore. 274, 166 P.2d 488, cert. denied 329 U.S. 742, 91 L.Ed. 640, 67 S. Ct. 45; Frebes v. Michigan Central Railroad Co., (1922) 218 Mich. 367, 188 N.W. 424; Fassbinder v. Pennsylvania Railroad, (D.C.Pa., 1961) 193 F.Supp. 767.

See also 35 Am.Jur., Master & Servant, Sec. 141.

Returning to a consideration of the evidence in this case, and viewing same in the light most favorable to the plaintiff, the most that can be said about the evidence in regard to actual or constructive notice is that the defective condition existed at the time of the injury, but no one knows when or how the defect arose. There is a complete absence of any evidence of when or how the defect arose or how long it had existed. It is contended by the plaintiff that the very nature of the defect, involving as it did a weakened spring or defective trigger or valve on the nozzle, is such as to have been necessarily one of long standing, as distinguished from a sudden defect. The Court believes that such a deduction under the proof is wholly speculative in this case.

It is likewise contended by the plaintiff that the manufacturer's specifications on the nozzle, which specifications were put in evidence, included instructions cautioning against storing the nozzle upside down, which instruction the defendant disregarded. However, at the trial no such contention was made, the manufacturer's instruction in this regard was never read into the record or placed before the jury and the use of the specifications was limited to other purposes.

Unless proof by the plaintiff of the existence of the defect at the time of the injury is, standing alone and of itself, sufficient to create a jury issue as to the actual or constructive knowledge of the defect by the defendant, there is a complete absence of evidence in the record to support a verdict upon this issue. The problem therefore narrows itself to one of determining whether the plaintiff has carried his burden of proof on the issue of negligence under an FELA case by showing the existence of defective equipment in the custody and under the control of the defendant at the time of his injury.

It has been suggested, in the case of Cereste v. New York, N. H. & H. R. Co., 231 F.2d 50 (C.A.2, 1956), cert. denied 351 U.S. 951, 76 S.Ct. 848, 100 L.Ed. 1475 (1956), that actual or constructive notice to the defendant might not be required under FELA where the defendant had control of the premises and therefore its conduct was the sole cause of the dangerous condition found by the jury to have existed at the time of the accident. This suggestion is dicta however as the Court found that there was ample evidence of notice.

■■ It would appear with considerable logic and the Court therefore holds, that under FELA cases, where the negligence relied upon is defective equipment and it is shown by the plaintiff that the equipment was defective at the time of the injury and further that the equipment had been in the custody of the defendant for some time prior to the accident, the defendant should be charged with the burden of going forward with the proof and negativing any actual or constructive knowledge of the defect. Such proof would be peculiarly within the possession of the defendant. Although this is not a *res ipsa* case, much of the same rationale as would apply in a res ipsa loquitur case would apply with equal logic to this situation. It has been repeatedly held that res ipsa loquitur applies to FELA cases. See Annotation, Res Ipsa Loquitur in Federal Employer's Liability Act Cases, 35 A.L.R.2d 475.

Moreover, the Sixth Circuit Court of Appeals has held that such a rule would apply in an analogous case. In Norfolk & W. R. Co. v. Hazelrigg (1911, C.A.6, Ky.), 184 F. 828, an inexperienced brakeman doing switching work in a railroad yard was employed in weighing cars which were required to be uncoupled as they were weighed. When the lever on the car on the side of the train where he was working would not uncouple two cars, because of a defect, he went between the cars as he had seen others do and was injured. At the close of the evidence the railroad company asked a peremptory instruction for a verdict in its favor on the ground that plaintiff had failed to prove actionable negligence and assigned the denial of its request as error. Affirming the holding of the trial court,

the Circuit Court of Appeals held that where it was apparent that a car with a defective coupling device had been hauled upon the railroad company tracks, the burden was upon the latter to prove that it had used all reasonably necessary endeavor to discern and correct the fault and that the plaintiff had made out his prima facie showing of negligence when he showed a defective condition of the coupling device. Although this case arose under the Safety Appliance Act, 45 U.S.C.A. § 1 et seq., the reasoning behind the Act and the decision would appear to apply to the present case.

■ The Court is therefore of the opinion that upon proof of the existence of the defective equipment in the custody and control of the defendant at the time of the plaintiff's injury a jury issue was created with regard to whether the defendant had actual or constructive notice of such defect.

■ Upon a review of the testimony in the case, the Court is of the opinion that a jury issue existed as to negligence upon the part of the defendant and as to proximate cause. It was a matter for the jury to say whether the defendant should have known of this condition by reasonable inspections or otherwise. It would be for the jury to say whether this proximately caused or contributed to the injury.

■■ The fact that the plaintiff sustained an unusual injury, in that the tendon to the biceps muscle broke loose from the point where it attaches to the shoulder, an injury that rarely occurs, would not preclude recovery. The fact that the exact injury as occurred may not have been anticipated or foreseen is not the test. The test of foreseeability does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred. Rather it is sufficient if the negligent person might reasonably have foreseen that *an* injury might occur from the existence of the defective equipment. 38 Am.Jur., Negligence, Sec. 62.

■ Turning now to grounds three and four of the defendant's motion for new trial relating to alleged excessiveness of the verdict, it is believed that these grounds should be overruled. The plaintiff testified to medical expenses totaling $1,645.37 and claimed loss of earnings of $16,010.81. The medical testimony estimated his permanent disability as being from less than 10% to as high as 40% of the body as a whole. The jury did not apportion the negligence of the parties in a manner known to the Court. The Court has no way of knowing what portion of the whole damages the jury may have considered the sum of $24,000 to have been. Under this state of the record the Court cannot say that the award is excessive.

■ In ground No. 5 to the defendant's motion for a new trial the defendant cites as error the action of the Court in a requested charge with regard to intervening cause. It is believed that the declining of this charge was not error. The evidence of negligence upon the part of the defendant related to the alleged defective condition of the hose nozzle and valve in allowing water to surge through it without depressing the trigger. If this condition existed, there is no evidence that it ceased to exist prior to the accident or that there was an intervening cause sufficient to render such defective equipment not the proximate cause of the injury. It is believed that the charge of the Court upon the proximate cause covered in substance the matters stated in the defendant's special request.

■ Grounds six and seven of the defendant's motion cite as error the action of the jury in declining to answer two special issues submitted to them relating to the apportioning of negligence between the parties. It is contended that the failure of the jury to respond to these special interrogatories creates an inconsistency between the general verdict and the special interrogatories. In the seventh ground it is contended that the failure of the jury in this respect to respond to the special interrogatories establishes

that the jury did not follow the law and mitigate the damages in proportion to the respective negligence of the parties as charged by the Court. After deliberation the jury returned to announce that they had agreed upon a general verdict for the plaintiff in the sum of $24,000 and that they had agreed upon special issues one, two and five, finding both the defendant and the plaintiff guilty of proximate negligence, and awarding the plaintiff $24,000. The Court then sent the jury back to deliberate further and respond to special issues three and four relating to the proportion of negligence between the parties and the plaintiff's total damages. After further deliberation the jury again returned to announce that they were unable to agree upon these two issues. The Court does not find that there is necessarily any inconsistency between the special issues and the general verdict. It would not necessarily be inconsistent for the jury to award the plaintiff $24,000 in damages but be unable to agree among themselves with regard to the relative proportion of negligence between the parties or with regard to the total damages of the plaintiff. For example, some jurors might have found total damages in the sum of $48,000 and the proportion of negligence as 50% resulting in an award of $24,000. Others might have found total damages in the sum of $36,000 and a ratio of two-thirds and one-third and awarded a recovery of $24,000.

Likewise the Court cannot necessarily say that the jury did not follow the charge of the Court with regard to the mitigation of damages. All that can be said with certainty is that the jury did not follow the instructions of the Court with regard to providing an answer to special interrogatories three and four. The inability of the jury to respond to these special interrogatories does not form a basis for declaring a mistrial or setting aside the general verdict. The rule in this regard is stated at 53 Am. Jur., Trial, Sec. 1083 as follows:

"It is only where the inconsistency between the special findings and the general verdict on material questions is of such a nature as to be clearly beyond the possibility of reconciliation under any supposable state of facts provable under the issues that the special findings control."

The motion will therefore be overruled as to each ground. An order will enter accordingly.